RAFAEL ACOSTA, Represented by his Father JOSÉ J. ACOSTA, Plaintiff and Appellant, *v.* PORTO RICO RAILWAY, LIGHT & POWER COMPANY, Defendant and Appellee.

No. 4060. Argued February 23, 1927.—Decided July 30, 1927.

*Manuel A. Martínez Dávila* and *Salvador Mestre* for the appellant. *J. H. Brown, Clemente Ruiz Nazario* and *Guillermo J. González* for the appellee.

Mr. Justice Hutchison delivered the opinion of the court.

Rafael Acosta, thirteen years and ten months of age, was injured by coming in contact with a high tension electric wire, while trespassing upon one of the steel towers used by the company to support the lines through which electric power is transmitted and distributed from the plant at Comerío Falls. The theory of the present action is that the tower in question, because of its location and character, was an attractive nuisance, and the first proposition submitted by appellant is that the court below erred in finding that the evidence did not establish the fact that children were accustomed to play about the place where the accident occurred.

The argument for appellant assumes that the trial judge proceeded upon the theory that it was necessary not only to show that children were accustomed to play about the tower but also that the children present at the time of the accident were accustomed to use the place as a playground, and further that they were not only accustomed to play about the tower but also upon it. But counsel do not specify any part of the "Statement of the Case and Opinion" which is open to this interpretation, nor do we find therein any satisfactory basis for the conclusion that the trial judge acted upon the theory attributed to him in the brief for appellant. The finding of the court below was in substance that the evidence adduced did not show that either the children present at the time of the accident or any other children had been accustomed to play in the vicinity.

Appellant points out that Raúl Marxuach, one of the children present at the time of the accident, testified that many people passed the place. This witness also said that he had never before seen the tower. He was eleven years old at the time of the accident and while under cross-examina-

tion with reference to the danger of walking along railway tracks and over railway bridges made the statement that many people were accustomed to pass that way, referring apparently to the use of the right of way as a foot path. In the absence of any further showing as to the personal experience of this witness and his consequent opportunities for observation, the probative value of the statement relied upon by appellant is manifestly rather more than doubtful.

The tower stands near the edge of the Martin Peña channel about one hundred and fifty meters from the public highway and between two embankments upon one of which is laid the track of the American Railroad and upon the other the interurban railway operated by defendant. The Martín Peña channel is the boundary line between the municipalities of San Juan and Río Piedras and the only building in the immediate vicinity of the tower is a slaughter house. The concrete base of the tower is laid in low and marshy ground which is more or less flooded by water at high tide.

Eduardo Arroyo was another of plaintiff's companions at the time of the accident, whose testimony is relied upon by appellant as tending to show that the side of the tower was not an unfrequented spot. Arroyo says that before the accident the boys had visited the slaughter house; that there were people in the slaughter house and that witness saw no one near the tower; that witness was accustomed to go to the slaughter house for meat and had seen other people going there to get tripe; that on previous occasions witness had passed the place traveling along the tracks upon the highway; that beyond the tower there is a mangrove swamp and below there is an uninhabited house; that witness had never seen people about the place and that there are no other houses in the vicinity. Then at the close of the direct examination comes the statement referred to in the brief for appellant. The record at this point reads thus:

"(Plaintiff) Q. The places around the neighborhood of the tower,

I do not mean close by but the area where you used to roam about, is a quiet or frequented place? A. Frequented.—Q. Who goes about there?—A. Many people. The railway hands pass by and cross over the bridge.—Q. Is that place a thoroughfare?—A. Yes, sir.—(Attorney) That will be all.

"(Defendant) Q. Where is the place the people you mention pass by?—A. The railway track.—Q. Is there no other path to go by, do they only pass over the track?—A. Over the track and they cross the bridge.—Q. Which track?—A. The trolley's.—Q. Which bridge do they cross?—A. The trolley's."

There was also some testimony to the effect that the street cars would stop when signaled at a point near the slaughter house in order to receive or discharge occasional passengers.

From the stenographic record of what the trial judge saw upon viewing the scene of the accident we take the following extract:

"This tower is surrounded on one side by a tract planted to Para grass, and on the other by the mangroves.

"It is situated about thirty feet from the Santurce slaughter house, and between the slaughter house and the tower is the trolley track on an embankment.

"The slaughter house is about 150 yards to the right of the San Juan–Ponce road, going from San Juan to Río Piedras, and the ground between the road and the slaughter house is planted to Para grass, as well as the ground about the slaughter house. On the other side of the trolley and the railroad tracks, which are parallel at this place, are the mangroves, and the tower is situated between the trolley and the railroad tracks.

"Two of the slaughter house buildings are very close to the trolley embankment and between the two is a wooden step ladder to climb to the trolley embankment. Two paths branch off from the step ladder. One goes towards Río Piedras. The other goes to the right in the direction of the tower, leads up to the railroad track and continues in the direction of the mangroves."

There was testimony tending to show that the tower had been erected upon lands owned by the defendant company, was equipped with a number of switches controlling various

distributing lines, and was frequently visited by employees of the company.

The mere fact that the right of way of the defendant company, or that the right of way of the American Railroad, was used by the employees of either or both corporations or by employees of the slaughter house, or by an occasional pedestrian in quest of tripe, or that the cars of the defendant company stopped at times on signal at a point near the slaughter house, does not in our opinion warrant the conclusion reached by counsel for appellant to the effect that children were accustomed to frequent the site upon which the tower was located, or that the defendant company had reasonable ground to anticipate that the tower would be used as an observatory by children of tender years who might happen to pass the spot on their way to or from the slaughter house, or while on any other errand.

The second proposition submitted by appellant is that the court below erred in finding that the tower in question was not an attractive nuisance *per se* because of its inherent adaptability for use as an observatory and consequent appeal to childish curiosity. It is intimated that authority for this view is not wanting in a number of jurisdictions, but no cases in point are cited. In the absence of anything more definite or persuasive in the way of argument the question does not demand serious consideration. A final determination as to the character of such structure when erected and maintained in a populous neighborhood, or in a place known by the company to be frequented by children of tender years, or where the company has reasonable ground to anticipate the use of these towers as observatories by such children, may well be postponed until that question arises out of facts established by evidence adduced at the trial in some future case.

Appellant also insists that the court below erred in applying the doctrine announced in *Grove* v. *Baltimore City*, 103 Atl. 948. The trial judge merely mentions the fact that

it has been held that a child who climbs a pole and touches an electric wire and is injured is not entitled to damages because of the non-existence in such a case of the alluring conditions necessary to justify a contrary conclusion and cites the *Grove Case* in support of this statement. In view of the conclusion already reached with reference to the first and second of the propositions submitted by appellant the error, if any, here complained of was harmless and we have not deemed it necessary to examine the *Grove Case* or to follow counsel for appellant in an extended discussion of the question of contributory negligence which seems to be a salient feature of the argument upon this phase of the instant case.

For similar reasons it will suffice to add that other contentions of appellant are that the court below erred in finding the evidence insufficient to show knowledge on the part of defendant that children were accustomed to play about the base of the tower; and that the judgment is contrary to the law and the evidence.

The judgment appealed from must be affirmed.

Mr. Justice Wolf took no part in the decision of this case.