EL MENOR RAFAEL ACOSTA, ASISTIDO Y REPRESENTADO POR SU PADRE CON PATRIA POTESTAD, JOSÉ J. ACOSTA, demandante y apelante, *v.* PORTO RICO RAILWAY, LIGHT & POWER CO., demandada y apelada.

No. 4060.—*Visto:* Febrero 23, 1927.   *Resuelto:* Julio 30, 1927.

NEGLIGENCIA—ACCIONES—EVIDENCIA—SU SUFICIENCIA EN GENERAL—COSAS ATRAC-TIVAS A LOS NIÑOS.—Situada una torre de acero que sostiene líneas de distribución de fuerza eléctrica de la demandada a una distancia de ciento cincuenta yardas de la carretera y separada de la misma por terrenos sembrados de malojillo levantada sobre terrenos pertenecientes a la demandada con su base de concreto enclavada sobre tierra baja y pantanosa que está más o menos cubierta de agua cuando la marea es alta, y rodeada a un lado por una zona sembrada de malojillo, y al otro, por los manglares, entre dos terraplenes sobre los cuales están las vías de dos compañías, una de estas la demandada siendo el único edificio que se halla en el vecindario inmediato de la torre un matadero los alrededores del cual están sembrados de malojillo no es *per se* un atractivo para los niños, y el mero hecho de que tanto una u otra vía se usen por empleados de una u otra compañía o por empleados del matadero, o por viandantes que fuesen en busca de mondongo de vez en cuando, o que los carros de la demandada se pararan a veces, al hacérseles una señal, cerca del matadero no justifica el concluir que niños frecuentaran el sitio en que estaba enclavada la torre o que la demandada tenía fundados motivos para anticiparse que dicha torre pudiera ser usada como observatorio por niños que pasaran por allí al ir o venir del matadero.

SENTENCIA de *Miguel A. Muñoz,* J. (San Juan), declarando sin lugar la demanda, sin costas.   *Confirmada.*

*Manuel A. Martínez Dávila* y *Salvador Mestre,* abogados del apelante; *J. H. Brown, Clemente Ruiz Nazario* y *Guillermo J. González,* abogados de la apelada.

EL JUEZ ASOCIADO SEÑOR HUTCHISON, emitió la opinión del tribunal.

Rafael Acosta, de trece años y diez meses de edad, fué lesionado al venir en contacto con un alambre eléctrico de alta tensión, mientras se hallaba ilegalmente (*trespassing*) en una de las torres de acero usadas por la compañía para sostener sus líneas a través de las cuales se transmite y distribuye fuerza eléctrica procedente de la planta sita en el Salto de Comerío. La teoría de la presente acción es que la torre de referencia, dada su situación y naturaleza, era un atractivo (*attractive nuisance*), y la primera cuestión sometida por el apelante es que la corte inferior erró al declarar que la prueba no establecía el hecho de que los niños acostumbraban jugar alrededor del sitio en que ocurrió el accidente.

La argumentación del apelante asume que el juez sentenciador procedió fundado en la teoría de que era no sólo necesario que los niños acostumbraran jugar alrededor de la torre, sino que esos niños que estaban presentes en el momento del accidente acostumbraban usar aquel sitio como lugar de recreo, y además, que no sólo estaban acostumbrados a jugar alrededor de la torre, sino en ella misma. Pero los abogados no especifican parte alguna de la ''Relación del Caso y Opinión'' que esté sujeta a esta interpretación, ni hallamos en la misma base satisfactoria para la conclusión de que el juez sentenciador actuó fundado en la teoría atribuídale en el alegato del apelante. La resolución de la corte inferior fué substancialmente que la prueba aducida no demostraba que ninguno de los niños que estuvieron presentes en el momento del accidente, o niño alguno, acostumbrara jugar por aquellos alrededores.

El apelante indica que Raúl Marxuach, uno de los niños que estaban presentes en el momento del accidente, declaró que muchas personas pasaban por aquel lugar. El testigo dijo además que no había visitado la torre anteriormente. Tenía once años de edad al tiempo del accidente, y en la

repregunta, con respecto al peligro de caminar por los rieles del ferrocarril y los puentes ferroviarios, manifestó que mucha gente ocastumbraba caminar por allí, refiriéndose al uso de la vía como un camino. No habiéndose demostrado en alguna otra forma la experiencia personal del testigo y sus consiguientes oportunidades de observación, el valor probatorio de la declaración en que se funda el apelante es evidentemente algo más que dudoso.

La torre está situada casi al borde del Caño de Martín Peña, como a ciento cincuenta metros de la carretera pública y entre dos terraplenes, sobre uno de los cuales está la vía de la American Railroad, operándose sobre el otro el tranvía eléctrico interurbano perteneciente a la demandada. El Caño de Martín Peña es la divisoria entre los municipios de San Juan y Río Piedras, y el único edificio que se halla en el vecindario inmediato de la torre es un matadero. La base de concreto está enclavada sobre tierra baja y pantanosa que está más o menos cubierta de agua cuando la marea es alta.

Eduardo Arroyo acompañó al demandante al tiempo del accidente, y en su declaración se basa el apelante para tratar de demostrar que los alrededores de la torre no son muy poco frecuentados. Arroyo dice que antes del accidente los muchachos habían estado en el matadero; que allí había gente, pero que no vió a nadie cerca de la torre; que estaba acostumbrado a ir al matadero en busca de carne y que había visto a otras personas ir a buscar mondongo; que en ocasiones anteriores el testigo había pasado por aquel sitio caminando por las vías o por la carretera; que más allá de la torre está el mangle, y más abajo, una casa deshabitada; que nunca había visto gente alrededor de aquel lugar y que no hay otras casas en el vecindario. Entonces, al final del examen directo hizo la manifestación a que se hace referencia en el alegato del apelante. La transcripción taquigráfica en cuanto a este extremo lee como sigue:

"(Dte.) A.  ¿Aquellos sitios por allí alrededor de la torre, no quiero decir al lado sino aquel espacio que ustedes exploraban por allí, es un espacio de movimiento o de quietud?

"T.  De movimiento.

"A.  ¿Qué pasa por allí?

"T.  Muchísima gente.  Los trabajadores que trabajan en la estación pasan por allí y cruzan el puente.

"A.  ¿Es un sitio de tránsito aquello.

"T.  Sí, señor.

"A.  Nada más.

"(Ddo.) A.  ¿Por dónde es que transita esa gente que usted dice?

"T.  Por la vía.

"A.  ¿Allí no hay ningún camino para pasar, solamente pasan por la vía?

"T.  Por la vía y cruzan el puente.

"A.  ¿La vía de qué?

"T.  Del trolley.

"A.  ¿Y cruzan el puente de qué?

"T.  Del trolley."

Hubo también alguna prueba al efecto de que los tranvías eléctricos, al hacérseles alguna señal, se detenían cerca del matadero para recoger o dejar pasajeros.

De la transcripción taquigráfica respecto a lo que vió el juez sentenciador al practicar una inspección ocular del sitio del suceso, tomamos el siguiente extracto:

"Esta torre se encuentra rodeada a un lado por una zona sembrada de malojillo, y al otro, por los manglares.

"Se encuentra a una distancia como de treinta pies de los edificios del matadero de Santurce, y entre el matadero y la torre pasa la vía del trole, que va levantada sobre un terraplén.

"El matadero se encuentra como a una distancia de 150 yardas a la derecha de la Carretera Central, yendo de San Juan hacia Río Piedras y el terreno entre la carretera y el matadero está sembrado de malojillo, así como los alrededores del matadero.  Al otro lado de las vías del trole y del ferrocarril, que van paralelamente por ese sitio, quedan los manglares, y entre la vía del trole y la vía del ferrocarril, es que está situada la torre.

"Dos de los edificios del matadero están muy próximos al terraplén de la vía del trole, y entre uno y otro hay una escalerilla de madera, subiendo al terraplén de la vía. De esta escalerilla parten dos veredas: una que va hacia Río Piedras y otra hacia el lado derecho en dirección a la torre; y sube la vía del tren, siguiendo en esta dirección hacia los manglares."

Hubo prueba tendente a demostrar que la torre había sido levantada sobre terrenos pertenecientes a la demandada, que estaba equipada de un número de *switches* que gobernaban las líneas de distribución, y que frecuentemente era visitada por los empleados de la compañía.

El mero hecho de que la vía de la compañía demandada o la de la American Railroad fueran usadas por los empleados de una o ambas compañías o por empleados del matadero, o por viandantes que fueran en busca de mondongo de vez en cuando, o que los carros de la demandada se pararan a veces, al hacérseles una señal, cerca del matadero, en nuestra opinión no justifica la conclusión a que llegan los abogados del apelante al efecto de que los niños acostumbraban frecuentar el sitio en que estaba enclavada la torre, o que la compañía demandada tenía motivo fundado para anticiparse que la torre pudiera ser usada como un observatorio por niños de corta edad que pasaran por aquel lugar al ir o venir del matadero o mientras realizaban algún otro mandado.

La segunda cuestión sometida por el apelante es que la corte inferior erró al declarar que la torre en cuestión no era *per se* un atractivo para los niños, a causa de su inherente adaptabilidad para ser usada como un observatorio y de su consiguiente incitación de la curiosidad infantil. Se indica que no dejan de haber autoridades en un número de jurisdicciones en apoyo de este punto de vista, pero no se cita caso aplicable alguno. En ausencia de algo más definido o persuasivo por vía de argumentación, la cuestión no merece mayor discusión. La determinación final respecto

al carácter de tal estructura, al ser erigida y sostenida en un vecindario populoso, o en un sitio que la compañía sabe es frecuentado por niños de corta edad, o que la compañía tiene motivo fundado para anticiparse el uso de estas torres como observatorios por tales niños, puede muy bien dejarse para cuando surja tal cuestión de hechos establecidos por la prueba aducida en el juicio en un caso futuro.

El apelante también insiste en que la corte inferior cometió error al aplicar la doctrina sentada en el caso de *Grove* v. *Baltimore City,* 103 Atl. 948. El juez sentenciador meramente menciona el hecho de que se ha resuelto que un niño que sube a un poste y toca un alambre eléctrico y es lesionado, no tiene derecho a indemnización por daños y perjuicios, dada la inexistencia de las condiciones de atracción necesarias para justificar una conclusión distinta, y cita el caso de *Grove* en apoyo de esta manifestación. En vista de la conclusión a que ya se ha llegado respecto a la primera y segunda cuestiones sometidas por el apelante, el error, si alguno hubo, de que se queja el apelante, fué inofensivo, y no hemos creído necesario examinar el caso de *Grove* o seguir a los abogados del apelante en una extensa discusión de la cuestión de negligencia contribuyente, la que parece ser un factor saliente de su argumentación sobre esta fase del presente caso.

Por razones similares bastará agregar que las otras contenciones del apelante son que la corte inferior cometió error al resolver que la prueba era insuficiente para demostrar que la compañía demandada tenía conocimiento de que los niños acostumbraban jugar alrededor de la base de la torre, y que la sentencia es contraria a derecho y a la prueba.

*Debe confirmarse la sentencia apelada.*

El Juez Asociado Sr. Wolf no intervino en la resolución de este caso.