BASILISA ALDIBA, Plaintiff and Appellant, *v.* PORTO RICO RAILWAY LIGHT & POWER Co., Defendant and Appellee.

No. 4938.   Argued January 15, 1930.—Decided May 31, 1930.

*Bolívar Pagán* for appellant.   *J. H. Brown, C. Ruiz Nazario* and *G. E. González* for appellee.

MR. JUSTICE TEXIDOR delivered the opinion of the Court.

Basilisa Aldiba, as mother and heir of her legitimate son, Juan Guzmán, brought an action in the District Court of San Juan against the Porto Rico Railway, Light & Power Co., a public service corporation doing business in Puerto Rico, and alleged that on January 21, 1925, in Canóvanas, Juan Guzmán, while walking upon a public bridge, touched certain electric wires lying on the ground at that place and belong-

ing to the defendant; and that in consequence of the shock the said Juan Guzmán died; that the accident was caused by the negligence of the defendant, which had carelessly left those wires, charged with a high voltage, lying on the highway; that Juan Guzmán supported the plaintiff, who has lost this pecuniary aid and has sustained great mental suffering by reason of such death. She claimed ten thousand dollars as damages.

The defendant, besides filing a demurrer for insufficiency of the complaint, answered the essential allegations thereof, in so far as prejudicial to it, and pleaded contributory negligence on the part of Guzmán and denied that the damages claimed were recoverable.

The case went to trial and, after hearing the evidence, the court rendered judgment in favor of the defendant. The plaintiff has appealed from that judgment and assigns manifest error in the weighing of the evidence.

An interesting part of the evidence is the certificate of view, which is in proper form and has been copied in the opinion of the court below, as follows:

"In the District Court for the Judicial District of San Juan, Puerto Rico.—Basilisa Aldiba, plaintiff, v. P. R. Railway, Light & Power Co., defendant.—Civil case No. 728. Damages.—CERTIFICATE OF VIEW.—On December 14, 1926, at the request of the parties in the present case, the Hon. Judge of this court went in person to the public bridge located between kilometers 18 and 19 of the public highway leading from San Juan to Fajardo, P. R., where the death of Juan Guzmán, which has given rise to the present action, occurred; and he was accompanied by the parties and by the stenographer of the court. Upon arriving there the court proceeded to note down the following particulars:

"The house of the road overseer is located to the left of the bridge and at a distance of from 30 to 40 yards, in the direction of Fajardo, P. R.

"The road has been built on an embankment and the roadbed stretches to a distance of 7 feet from the pole which supports the wires. This pole is located at the edge of the embankment. Be-

tween the said pole and the end of the bridge there are three trees. To the right of the road there are also wires.

"The height of the bridge, at the lowest point, is 4 feet and 6 inches.

"The pillar where the accident occurred is 9 feet and 6 inches high by 4 inches wide. The surface on the upper part of the pillar is slanting. There is a distance of. 11 inches from the border to the top with a 4 inch grade. The said surface extends 2 feet and 1 inch in one direction and 2 feet and 10 inches in the other direction.

"And to incorporate into the record of the above entitled case, the within certificate is issued at San Juan, P. R., this 17th day of December, 1926."

What the district court says in its statement of the case and opinion in regard to the evidence is also very interesting. It is as follows:

"I very well remember that the plaintiff produced two witnesses, whose testimony in regard to the accident was almost identical; both witnesses arrived at the place of the occurrence, both saw Juan Guzmán lying on the ground with the wire underneath one of his sides, which, it seems to me, was the right side; both of them state that his hands and feet were burnt. But there is a circumstance which makes me doubt the veracity and accuracy of their statements, which doubt arose in my mind as soon as I heard them testify, and it is this: One of these witnesses told the court that he had seen Dr. Aubray while the doctor was performing an autopsy on the body of Juan Guzmán, at the time such autopsy was being performed. Afterwards Dr. Aubray stated under oath that he had not performed any postmortem examination in order to determine the cause of the death of Juan Guzmán or for any other purpose. So that bearing in mind those two circumstances, that is, the similarity of their testimony and the contradiction pointed out, for I give the greatest credence to the testimony of Dr. Aubray, I can not avoid the conclusion that those two witnesses did not convince me of their veracity.

"On the other hand, one of the witnesses for the defendant testified that on reaching the place of the accident he found Juan Guzmán across the high parapet of the bridge, and that he himself helped, with other persons, to bring him down from the parapet. I put several questions to this witness in order to ascertain the truth of his statement and I was convinced that he spoke the truth as to what had happened."

Now the appellant in her brief focusses her argument upon the question of the weighing of the evidence. It is true that Ramón Algarín, one of the witnesses for the appellant, stated that he had found stretched on the road a man who was shaking and who turned out to be Juan Guzmán, that there was a broken wire close by or touching the body of that man, and that then Manuel Morales and Eugenio Reyes arrived. The latter testified in short that a peddler informed them that there was on the road a man jumping, and that they went there and found Guzmán and saw electric wires underneath his body. But the defendant introduced other witnesses (Felipe Escobar, Jacinto Calderón and Nicolás Reyes) to show that Juan Guzmán was lying on top of the highest part of the parapet of the bridge, face up, his legs hanging on either side, and that he was lowered from that place by those witnesses.

The court weighed the testimony on both sides and found that there were statements with every appearance of being false when compared and checked with the rest of the evidence, and concluded that the defendant's witnesses told the truth. There is no doubt that in arriving at this conclusion other testimony appearing of record played a very important rôle.

Under these circumstances, and as there is nothing in the evidence which might lead us to think that the court erred in adjusting the conflict, we hold that the error assigned by the appellant is non-existent. Above all, there is lacking proof of a causal connection, the proximate cause, required in cases of this kind in accordance with the doctrine laid down in *Garcia* v. *San Juan Light etc.*, 17 P.R.R. 595. Such causal connection is an essential element in all these cases. It was specifically alleged in the case at bar that the death of Juan Guzmán was caused by his coming in contact with a wire heavily charged with electricity which was lying on the road over which Guzmán had to pass, and which had thus been negligently left there by its owner, the defendant. Accord-

ing to the examination of the evidence made by the trial court those allegations were not proved; on the contrary, what appears from the evidence as established is that the wire was lying on top of a wall, which is no part of the road and which Juan Guzmán should not have climbed.

It is true that the trial judge spoke of a case of *res ipsa loquitur* in deciding a motion for nonsuit made by the defendant. But it is well to note that in so doing he referred to the wires being charged with an electric current. He said:

"As to the other question, that the electric current has not been shown, my opinion is that this is a case of *res ipsa loquitur*. In view of the fact that the man was burned and died, and that there is testimony to the effect that he died from the burning and that such burning was caused by an electric wire, no proof, I think, is required to establish that the wire was sufficiently charged for killing the man."

It is possible that the above quoted statements of the judge may have given rise to some confusion. The doctrine of *res ipsa loquitur* is an exception to the general rule in regard to the proof of negligence. In the English case of *Scott v. London and St. Katherine Docks Co.*, 3 H. & C. 596, 601, 159 Reprint 665, an accurate definition of that doctrine is set forth. It was there declared that, where the thing which caused the injury complained of is shown to be under the management of the defendant or his servants and the accident is such as in the ordinary course of things does not happen if those who have its management or control use proper care, it affords reasonable evidence, in the absence of explanation by defendant, that the accident arose from want of care.

It will be readily noted that the doctrine of *res ipsa loquitur* establishes a presumption, which may be overcome by evidence adduced by the defendant. It does not mean that the defendant is barred from introducing evidence once the presumption arises.

In the case at bar both the plaintiff and the defendant introduced evidence, which was heard. The trial judge gave no credence to plaintiff's evidence, and in his statement of the case and opinion he sets forth the reasons for his disbelief. On the other hand, he gave credence to the evidence introduced by the defendant and based thereon his findings as to the controlling facts, thus stated in the opinion:

"So that, in my judgment, it has been proved that these wires did not touch the body of Juan Guzmán while he was standing on the road.

"The plaintiff tried to prove that Juan Guzmán was found lying on the roadway of the bridge, in a dying condition, with electric wires close to his body. The defendant, on the other hand, endeavored to show that Juan Guzmán was found perched on one of the pillars of the bridge with his head and arms hanging over the road, and that his body had to be lowered from there in the arms of some of the witnesses, who testified that there were no wires on the roadbed at that place.

"Such is the state of the evidence. Although in my opinion it has been proved that Juan Guzmán died from an electric shock, in view of the attendant circumstances of this case it does not seem to me that I should apply here the rule of *res ipsa loquitur*, since there is no proof as to the manner in which the death occurred nor as to the surrounding facts enabling me to conclude that the defendant company has been in any way negligent, and that such negligence had been the cause of the death of Juan Guzmán. I could only conclude from surmises that perhaps Juan Guzmán climbed to a point on the bridge—as shown from the certificate of view, the bridge is rather high and great physical exertion would be required in order to climb the pillars—and that from there he reached up and touched one of the wires. If this is so, under the present state of the law, the heirs of Juan Guzmán are not entitled to recover from the defendant, as may be seen from a review of the authorities made by the undersigned in the case of Rafael Acosta v. Porto Rico Railway, Light & Power Co., decided on February 20, 1926, where the plaintiff was a minor. See also the cases of Amos Trout et al. v. Philadelphia Electric Co., 42 L.R.A. (N.S.) 713; Grube v. Mayor, etc., of Baltimore, 103 Atl. 948, and Heller v. New York N. H. & H. R. Co., 265 Fed. 192, where it was he'd that the company was not liable for the

death of a ten-year old child who climbed an embankment and from there reached a high tension wire, on the ground that there was no reason for expecting that the child would so act."

We have read the stenographic transcript, and the conclusion reached by the judge as to the facts seems to us to be logical and correct. We are unable to find any error.

The judgment appealed from must be affirmed.