Basilisa Aldiba, demandante y apelante, *v.* Porto Rico Railway Light & Power Company, demandada y apelada.

No. 4938.—*Sometido:* Enero 15, 1930.   *Resuelto:* Mayo 31, 1930.

*Bolívar Pagán,* abogado de la apelante; *J. H. Brown, C. Ruiz Nazario y G. E. González,* abogados de la apelada.

El Juez Asociado Señor Texidor, emitió la opinión del tribunal.

Basilisa Aldiba, como madre y heredera de su legítimo hijo Juan Guzmán, presentó demanda, ante la Corte de Distrito de San Juan, contra Porto Rico Railway, Light and Power Company, como corporación de servicio público que hace negocios en Puerto Rico, alegando que el 21 de enero de 1925, en Canóvanas y en un puente público Juan Guzmán, mientras caminaba por el puente tocó unos hilos eléctricos, que rodaban por el suelo en aquel sitio, y que eran propios de la demandada, y a consecuencia del choque falleció carbo-

nizado el referido Juan Guzmán; que el accidente fué causado por la negligencia de la demandada, que había dejado sin cuidado esos alambres cargados de fuerte corriente, rodando por la vía pública; que Juan Guzmán sostenía a la demandante, que ha perdido su ayuda material y sufrido crueles dolores morales, y que estima en diez mil dollars sus daños y perjuicios.

La demandada, aparte de excepcionar la demanda por falta de hechos, contestó negando las alegaciones esenciales, en lo que la perjudican, alegando la negligencia causante de Guzmán, y en su caso la contributoria, y negando la procedencia de daños y perjuicios.

Se oyó el caso, y en él la prueba, por la corte; y ésta dictó sentencia declarando sin lugar la demanda. De esa sentencia ha apelado la demandante, señalando manifiesto error en la apreciación de la prueba.

██ Parte interesante de la prueba es la diligencia de inspección ocular, que aparece perfectamente hecha y transcrita en la "Opinión" de la corte a quo, y cuyo texto es como sigue:

"En la Corte de Distrito del Distrito Judicial de San Juan, Puerto Rico.—Basilisa Aldiba, demandante, vs. P. R. Railway, Light & Power Co., demandada.—Civil No. 728.—Sobre Daños y Perjuicios.—ACTA DE INSPECCIÓN OCULAR.—El día 14 de diciembre de 1926, a petición de las partes en este caso, se constituyó el Hon. Juez de esta Corte en el puente público tendido entre los kilómetros 18 y 19 de la carretera pública que conduce de San Juan a Fajardo, P. R., sitio donde ocurrió la muerte de Juan Guzmán, que se trata en este caso; acompañado de las partes y del taquígrafo de la Corte; y allí la Corte procedió a consignar los siguientes extremos:

"La casa del peón caminero está situada a la izquierda del puente a una distancia de 30 a 40 yardas, caminando hacia Fajardo, P. R.

"La carretera está construída en un terraplén y el firme de la misma llega a 7 pies de donde está el poste donde están los alambres. El poste está al borde del terraplén. Entre el poste y la terminación del puente hay tres árboles. A la derecha de la carretera hay también una línea de alambres.

"El alto del puente en la parte baja es de 4 pies y seis puigadas.

"El pilar donde ocurrió el accidente tiene 9 pies y 6 pulgadas de alto por 4 pies de ancho. La superficie en la parte superior del pilar tiene declive. ·De la orilla hasta el tope arriba tiene 11 pulgadas y en las mismas baja a 4 pulgadas. Esta superficie que se menciona tiene 2 pies 1 pulgada en una dirección y 2 pies 10 pulgadas en la otra.

"Y para incluir en el expediente del caso de epígrafe se da la siguiente acta a los 17 días del mes de diciembre de 1926, en San Juan, P. R."

Y tan interesante es también lo que, acerca de la prueba, se dice en la relación del caso y opinión de la corte de distrito:

"Recuerdo perfectamente bien que la demandante me presentó dos testigos, y que éstos declararon casi exactamente en las mismas palabras en cuanto al accidente; ambos llegaron al sitio, ambos vieron a Juan Guzmán tirado en el suelo con el alambre que le pasaba por debajo del costado, y me parece que era el costado derecho; ambos dicen que tenía las manos y los pies quemados. Pero hay una circunstancia que me hace dudar de la veracidad y de la certeza de estas declaraciones, duda que surgió en mi mente desde el momento en que los oí declarar, y esa circunstancia es ésta: uno de estos testigos nos dijo que había visto al Dr. Aubray cuando el Dr. le había hecho la autopsia a Juan Guzmán, en el·momento en que dicha autopsia se estaba levando a cabo. Más tarde, el Dr. Aubray nos dijo bajo juramento que él no había hecho autopsia alguna para determinar la causa de la muerte de Juan Guzmán ni para ningún otro fin. De modo que teniendo presente estas dos circunstancias, es decir, de la similaridad de las declaraciones, más esta otra, pues el Dr. Aubray me merece el mayor crédito como testigo, hemos de llegar a la conclusión que estos testigos no me convencieron de la certeza de esas manifestaciones.

"Por el contrario, la demandada presentó, entre sus testigos, uno que declaró haber llegado al sitio del accidente y haber encontrado allí atravesado sobre el pretil alto del puente a Juan Guzmán, y que él mismo, junto con otras personas, ayudó a bajarlo de dicho pretil. A este testigo repetidas veces le hice preguntas con el objeto de cerciorarme de la firmeza de su declaración, o de su falsedad, y de todo ello llegué a convencerme de que este hombre declaraba lo cierto, y lo que había ocurrido."

Ahora, en su alegato, la apelante, en primer lugar fuerza su argumentación sobre la apreciación de la prueba. Es verdad que de los testigos de la apelante, Ramón Algarín dijo haber encontrado tendido en la carretera un hombre, temblando, y que ese hombre resultó ser Juan Guzmán, y que había un alambre partido cerca de, o pegado a dicho hombre, y que luego llegaron Manuel Morales y Eugenio Reyes. Estos, en resumen dijeron que un quincallero les avisó de que había en la carretera un hombre brincando, y fueron allá y encontraron a Guzmán, vieron debajo del sujeto hilos de la luz. Pero la parte demandada presentó evidencia testifical (Felipe Escobar, Jacinto Calderón y Nicolás Reyes) para demostrar que Juan Guzmán se hallaba encima del muro más alto del puente, acostado boca arriba, con las piernas colgando para los lados, y de allí le bajaron esos mismos testigos.

La corte pesó las declaraciones de unos y otros, encontró manifestaciones que tenían todas las apariencias de ser falsas, comparadas y contrastadas con el resto de la prueba, y llegó a la conclusión de que los testigos de la demandada decían la verdad. Es indudable que para llegar a esta conclusión, fueron factores de la mayor importancia otros testimonios que aparecen en récord.

En esas condiciones, y no encontrando en la prueba nada que nos lleve a creer que en la solución del conflicto hubiera error de parte de la corte, declaramos que no existe el señalado por la apelante. Falta, sobre todo, la prueba de la relación de causa y efecto, como tal relación directa e inmediata, que sería necesaria, siguiendo la doctrina legal sentada en el caso *García* v. *San Juan Light etc.*, 17 D.P.R. 626. Esta relación es de esencial importancia en todos los casos. En éste, se alegó de una manera específica que la muerte de Juan Guzmán se debió a haber sufrido éste el contacto con un alambre cargado de intensa corriente eléctrica, que estaba tirado en el camino por donde tuvo que pasar Guzmán, y que había sido así dejado negligentemente por la demandada, dueña de ese alambre. Y del examen que de la prueba hizo la

corte, esos hechos no se justificaron; y antes al contrario, lo que de la prueba aparece con carácter de veracidad, es que el alambre se hallaba encima de un muro, que no es parte del camino, y a donde no debió subir Juan Guzmán.

■■ Es cierto que el juez, al resolver una moción de *non-suit* de la demandada habló de un caso de *res ipsa loquitur*. Pero es bueno hacer constar que lo hizo con referencia a la existencia de corriente eléctrica en los alambres. El dijo:

"La otra cuestión de que no ha habido prueba de la corriente, yo entiendo que éste es un caso de *res ipsa loquitur*. El hecho de que se haya quemado el individuo y haya muerto, y haya quien manifieste que ha muerto como consecuencia de esa quemadura, y que esa quemadura fué producida por un agente conductor de electricidad, entiendo que no se necesita prueba que establezca que el alambre llevaba suficiente potencia para matar, cuando el hombre murió."

Es posible que haya alguna confusión nacida de este dicho del juez. La doctrina de *res ipsa loquitur* es de excepción a la regla general en cuanto a la prueba de negligencia. En el caso inglés *Scott* v. *London & St. Katherine Docks*, 5 H. & C. 596, 601, 159 Reprint 665, se ha establecido la verdadera definición de la doctrina declarándose que cuando se demuestra que la cosa que causó el accidente se hallaba bajo el manejo del demandado o sus empleados, y que el accidente es de tal naturaleza que en el curso ordinario no ocurre si los que tienen el manejo o dirección emplean el debido cuidado, ello ofrece evidencia razonable, a falta de explicación por el demandado, de que el accidente surgió por falta de cuidado (diligencia).

Como claramente se ve, la doctrina de *res ipsa loquitur* establece una presunción, que puede destruirse por la prueba del demandado. No es que una vez que ella surge, se impide al demandado que pruebe.

En este caso la prueba de la demandante fué practicada, y lo mismo la de la parte demandada. El juez negó crédito a la presentada por Basilisa Aldiba, y expresó en la relación

de hechos y opinión, el porqué de tal negativa. En cambio dió asenso a la de la demandada, y sobre ella estableció el hecho fundamental declarado así en la opinión.

"De modo que yo entiendo que se ha probado que estos alambres no vinieron en contacto con el cuerpo de Juan Guzmán mientras él estaba en la carretera.

"La demandante trató de probar que Juan ·Guzmán fué encontrado en el piso del puente de la carretera, acostado en estado agonizante, teniendo alambres eléctricos próximos a su cuerpo. La demandada, por el contrario, trató de probar que Juan Guzmán fué encontrado sobre uno de los pilares del puente, con su cabeza y brazos hacia la carretera, y que de allí hubo de ser bajado en brazos de algunos de los testigos que declararon que allí no había tampoco alambres en el piso de la carretera.

"Esa es la situación de hecho. Aun cuando entiendo que se ha probado que Juan Guzmán, para mí, murió de un choque eléctrico, ·sin embargo, de las circunstancias del caso no aparece que yo deba aplicar al mismo la regla del *res ipsa loquitur*, puesto que aquí no ha habido prueba de cómo sucedió esta muerte, ni tampoco de las circunstancias de la misma para poder yo llegar a la conclusión de que la compañía demandada ha sido, en alguna forma, negligente, y que esa negligencia fué la causa de la muerte de Juan Guzmán. Yo podría, únicamente, por conjeturas llegar a la conclusión de que quizás Juan Guzmán se subió al puente—que como se verá del acta de inspección ocular es bastante alto y es necesario hacer grandes esfuerzos para poderse subir a estos pilares— y de allí tocó con sus manos y alcanzó uno de los alambres. Si esto es así, de acuerdo con la jurisprudencia existente, los herederos de Juan Guzmán no tienen derecho a reclamar de la demandada, como podrá verse por la teoría expuesta por el Juez que suscribe en el caso del menor *Rafael Acosta* v. *Porto Rico Railway Light & Power Co.*, resuelto con fecha 20 de febrero, 1926, y teniendo en cuenta que en dicho caso, el demandante era un menor. Véanse, además, los casos de Amos Trout et al. V. Philadelphia Electric Co., 42 L.R.A. (N. S.) 713; Grube v. Mayor etc. of Baltimore, 103 Atl. 948; Heller v. New York N. H. & H. R. Co., 265 Fed. 192, en donde se resolvió que la compañía no era responsable de la muerte de un niño de diez años que se subió a un terraplén y de allí alcanzó un alambre de alta tensión, sobre la base que no había razón para esperar que el niño así lo hiciera."

Hemos leído el record taquigráfico; y la conclusión a que

llega el juez, en cuanto a los hechos, nos parece correcta y lógica. No vemos en ella error alguno.

*Debe confirmarse la sentencia apelada.*