STATE, TO USE OF EURIE ALSTON ET AL. *v.* BALTI-MORE FIDELITY WAREHOUSE COMPANY.

[No. 37, January Term, 1939.]

342

*Decided March 8th, 1939.*

The cause was argued before BOND, C. J., OFFUTT, PARKE, SLOAN, MITCHELL, JOHNSON, and DELAPLAINE, JJ.

*William Saxon,* with whom was *Albert B. Huss* on the brief, for the appellants.

*Walter L. Clark, Roszel C. Thompsen,* and *Clater W. Smith,* submitting on brief, for the appellee.

PARKE, J., delivered the opinion of the Court.

In the action of State of Maryland, to the use of Eurie Alston and wife, against the Baltimore Fidelity Warehouse Company, a corporation, the declaration was held

bad on demurrer, and, on failure of the plaintiff to amend or plead, a judgment of *non pros.* was entered, and the plaintiff brought this appeal.

Marvin Alston, an infant son of the parents for whose use the suit was brought, was eleven years old at the time of his death by drowning under circumstances which are asserted to make the defendant liable in an action of tort. The declaration is in one count and contains these allegations.

The defendant is the owner and operator of a warehouse which is located on the north side of York Street at its intersection with Battery Avenue. These two ways are public highways of Baltimore City. Battery Avenue ends on the north side of York Street at the tidal water line of the harbor. At the foot of Battery Avenue a stone wall, two feet high, is built across the highway at the water line. The defendant owned a raft, which was built of five boards and held together by narrow planks. The defendant kept the raft in the water along its property at the foot of the avenue, where it floated and was made fast by a short rope, which was tied by some device to the stone wall. The raft was alleged to be in full view and reach of a child of tender years when standing at the foot of Battery Avenue, but this statement is subject to the necessary modification imposed by the interposition of the stone wall.

It is further alleged that to the knowledge of the defendant young children were constantly playing in the highways about this intersection, and that nevertheless the defendant permitted a dangerous, defective, and unsafe raft or float to remain on the water along its property at the foot of Battery Avenue, unguarded and without notice or warnings of any kind or character to the children to warn them of the danger of the use of the raft. The further allegation is made that the infant, Marvin Alston, who it is stated was mentally sub-normal, while so playing, attempted to use the raft, and "was thrown or fell or became precipitated from the said raft unto said water, where he was drowned." The declara-

tion then concludes with the general affirmation that the infant was in the exercise of due care and caution, and that the death was the direct result of the negligence and want of care on the part of the defendant, whereby the parents have been deprived of the services, assistance, and support of the said infant, to their great damage.

On these allegations the plaintiff contends that a right of action arises on the theory that what is generally known as the doctrine of "attractive nuisance" is applicable.

It will be observed that it is not alleged that the children had ever used the raft or had played with it or on it. While the infant of eleven years is stated to have been "mentally sub-normal," it is not charged that this condition was known to the defendant, nor in what way the sub-normal state affected the infant in respect of his ability to perceive and appreciate the danger of playing on a small raft afloat in the water, and to refrain from going upon it. See *Grube v. Baltimore,* 132 Md. 355, 360, 361, 103 A. 948. Whatever the effect of such allegations, if they had been made, their absence leaves the negligence charged to the defendant to be merely maintaining an unguarded raft in public waters in use for its private purposes, without giving any notice or warning to the children playing in Battery Avenue of the danger of using the raft, which became accessible to a child after he had gone over an intervening stone wall.

The raft was afloat but fast in a harbor, and there is no charge that it was carelessly or unlawfully moored. Furthermore, the defendant is not shown to have been in exclusive control of the waters where the raft was made fast, nor is there any intimation how long the raft had occupied its position at the foot of Battery Avenue. Neither is there any statement that any child had ever before ventured upon the raft, so there is no basis for even an inference that the defendant either had permitted, acquiesced in, or had knowledge of any use of the raft either by the dead infant or by any other child or third party.

The raft was simply made of five boards bound to-

gether by narrow planks. It is stated to be "dangerous, defective and unsafe," but in what respect is not mentioned, nor does it appear how or by what cause the infant was "thrown or fell or became precipitated from the said raft" into the water. *Jeter v. Schwind Quarry Co.*, 97 Md. 696, 698-701, 55 A. 366; *Anne Arundel County Commrs. v. Carr*, 111 Md. 141, 148, 149, 73 A. 668; *Phelps v. Board of Commrs. of Howard County*, 117 Md. 175, 178, 82 A. 1058; *Frisch v. Baltimore*, 156 Md. 310, 312, 144 A. 478. There is nothing to indicate the raft was a trap or its danger covert. The nature and construction of so primitive a raft or float was apparent. There was no hazard in its location, and whatever the danger of the raft, it was open and obvious and attributable to the manner of the raft's use and the waters upon which it was borne.

The child was a trespasser. To reach the raft he had to leave the public street where he was at play, get up and upon the barrier interposed by the two-foot stone wall, and from there either lower himself to the raft or jump to it from the top of the stone wall. Any child would have known not only that he had no right to make this venture but also that it was dangerous. The stone wall was a guard and a warning and an obstacle placed in the way to prevent unrestricted access at this point to the water.

The allegations clearly show the defendant was in the lawful use of its own property in its lawful business at the time of the death of the infant, and that the infant's death by drowning, after falling from the raft, was not caused by any breach of duty which the defendant owed to the infant at the time. Since the defendant did not know that the child was mentally sub-normal, that fact does not confer greater rights upon the child. Until the defendant has knowledge or the means of knowledge of infirmity, he is justified in acting as he would be entitled to act on the assumption that the plaintiff is normally constituted. Again, the mere fact of an injury occurring to a young child will not raise a presumption of negli-

gence any more than in the case of an adult. *Beven on Negligence* (4th Ed.), pp. 178-180; *Siacik, Admr., v. Northern Cent. Ry. Co.,* 92 Md. 213, 221, 48 A. 149; *Bannon v. Balto. & O. R. Co.,* 24 Md. 108, 125 (7 yrs.); *McMahon v. Northern Cent. R. Co.,* 39 Md. 438, 456 (5 yrs.); *Balto. & O. R. Co. v. State, to use of Fryer,* 30 Md. 47, 52 (5 yrs.).

Again, it is to be carried in mind that the defendant had not created a nuisance by the mooring of its raft, which was where it had a right to be. Nor were the presence and location of the raft sufficiently near the highway to impart danger to its ordinary use, as where there is an excavation, body of water, or defective gateway so close to the border of the highway as to be dangerous to travelers. *Pindell v. Rubenstein,* 139 Md. 567, 580, 581, 115 A. 859. In the case at bar, the street came to an end at the water and a stone wall was built across its width to bar further advance to the water of the harbor where the raft floated. Nor did the presence of the raft add to the natural danger of the open water at the end of Battery Avenue.

There is no legal duty to refrain from mooring the raft to the outer face of the wall, and, without legal duty, and default, there is no possibility of legal liability. If the victim of the drowning had been an adult, who had surmounted the wall and jumped or let himself down to the raft, and had fallen from it into the water, there can be no question the victim was a trespasser to whom the defendant owed no duty, and so, no action is maintainable. There is no special obligation of duty in the case of a young child. If there is a duty it is an obligation which runs to both adults and infants alike, although the degree of care so as adequately to perform that duty will vary according to the relative ability of infants or infirm persons to take care of themselves in contrast with ordinary persons. In short, the duty is constant, but the degree of care imposed by the duty is variable in correspondence with the capability of the individual. Thus, although the duty of a municipality to persons, whether

adults or infants, is to keep the highway reasonably safe for travel, yet, as children are less intelligent or careful and so less able to care for themselves, the municipality is charged with providing against dangers which attached to the use of the highway by the children, even if the degree of due care had been exercised with respect to older individuals to whom it was owing.

A raft, which is floating in the harbor at short rope's end from defendant's warehouse, and is inaccessible to any one in the use of the highway on land except by leaving the highway and becoming a trespasser by climbing over the barrier of a stone wall and going upon the raft, is neither such a danger as to be a nuisance, nor an invitation extended for its occupation or use by adult or child. Invitation involves the existence of an intent to induce others to act responsively. The raft was a necessity in the defendant's business. Its utility was obviously so limited, and the mere fact that the venturesome impulse or disposition of a child would urge its appropriation as a plaything was merely an incidental and unintended effect which may not be ascribed to an intention of the owner. The landowner's purpose would be partly if not wholly defeated by the presence of children and their use of the raft. There is surely no duty on the part of the owner of the raft to take any step to safeguard persons generally. Nor is it a duty of the owner to protect children from their own negligence under the given circumstances. Whence comes the duty of the owner to act as the protector of children in their play or to keep them away from his property, which is not to be reached by the children except by going over the protective barrier of a stone wall? Is the owner to furnish the children with the care which neither the State, their parents, nor their guardians give? Is he to respond in damages for such omission in an action brought for the pecuniary benefit of these parents? See *Beven on Negligence* (4th Ed.) 179; *Balto. & O. R. Co. v. State, use of Fryer*, 30 Md. 47, 53; *Landowners' Liability to Children*, Jeremiah Smith, Harvard Essays, pp. 357-396; *Restatement of Law*

*of Torts,* vol. 2, sec. 496; *Ames v. Waterlow,* 1869, L. R. 5 C. P. 53, at page 55.

The owner had no actual knowledge of the trespass, and had never permitted nor acquiesced in the use of the raft by children. It is true that the defendant knew that children played in the adjacent highway which ended at the stone wall, but it is not charged nor may it be assumed that the defendant either desired or intended to have the children come upon the raft. Nor may it be said that its lawful use of the raft in the course of its lawful business was other than what was reasonably necessary and permitted, if owners are to have the ordinary beneficial use of property within the limits of their own property rights. The argument made by the plaintiff implies that the owner must, at its peril, either keep its premises free from a raft which unattended children of no discretion might be attracted to, and harmed, or so maintain its property as to prevent such children from entering, or provide guards to protect them after they become trespassers. The argument is not without weighty support in the decisions of courts in whose jurisdictions the doctrine of attractive nuisance prevails. See *Harvard Essays,* pp. 395, 396; and cases and able and exhaustive annotations found in 36 *A. R. L.* 34; 39 *A. R. L.* 486; 45 *A. L. R.* 982; 53 *A. L. R.* 1344; 60 *A. L. R.* 1444; 68 *A. L. R.* 1408; 100 *A. L. R.* 440.

Notwithstanding the adoption of this doctrine in numerous States, the tendency is to restrict its application because experience has demonstrated the difficulty in definition of what is or is not attractive to children of tender years, and, the circumstances which render it so dangerous to such children as to constitute a nuisance. Furthermore the doctrine casts upon the occupiers of land a new and onerous obligation, without any fixed standard of care, and imposes restraint upon forms of user which are of danger only to young children of indefinite age who enter without leave. *United Zinc & Chemical Co. v. Britt,* 258 U. S. 268, 42 S. Ct. 299, 66 L. Ed. 615; *New York, N. H. & H. R. Co. v. Fruchter,* 260 U. S.

141, 43 S. Ct. 38, 67 L. Ed. 173; *Mindeman v. Sanitary District,* 317 Ill. 529, 148 N. E. 304; *Beickert v. G. M. Laboratories,* 242 N. Y. 168, 151 N. E. 195. Although the doctrine of attractive nuisance is supported by arguments which are rooted in the policy of the law to establish rules which tend to safeguard life and to keep persons from bodily harm, nevertheless this court has not applied the doctrine of attractive nuisance, but has left the right and liability of the parties for solution in accordance with the applicable principles of torts. The trespasser must accept the property as he finds it, and the general rule is that the occupier of property owes no duty to trespassers except to refrain from wilfully injuring them. *Maenner v. Carroll,* 46 Md. 193; *Mergenthaler v. Kirby,* 79 Md. 182, 28 A. 1065.

In *State v. Longeley,* 161 Md. 563, 566, 158 A. 6, 7, it is said: "The doctrine of attractive nuisance has never been applied it this state, although this court has had before it [a number of] appealing cases in which it was strongly urged that the doctrine was applicable. *Grube v. Baltimore,* 132 Md. 355, 103 A. 948, 951; *Baltimore v. De Palma,* 137 Md. 179, 112 A. 277, 279; *State, use of Lease, v. Bealmear,* 149 Md. 10, 130 A. 66. It was said in the *Grube* case, *supra,* that it might be justly applied in some cases. But as it was not applied in that case it is safe to say that it would not be applied here under ordinary circumstances."

The citations in this quotation are of cases where boys from ten to twelve years old were held trespassers or mere licensees, and were denied recovery, although they were injured on the defendant's property in the course of incurring a danger which either had been previously frequently risked by children at play, or which had been known by the defendant to exist, without adequate safeguards having been taken to prevent such children from incurring the danger. See *Stansfield v. Chesapeake & Pot. Tel. Co.,* 123 Md. 120, 91 A. 149; *Benson v. Balto. Traction Co.,* 77 Md. 535, 26 A. 973; *Mergenthaler v. Kirby,* 79 Md. 182, 186, 28 A. 1065.

In these instances children were either trespassers or mere licensees, and, therefore, no recovery was permitted. In the case of *State, use of Lorenz, v. Machen,* 164 Md. 579, 165 A. 695, the question was lately considered, and the court again distinguished between the children who are on the premises of the occupier with or without permission and those who are there by express or implied invitation. Whether the child be there as a trespasser or by mere permission, but not as an invitee, he must take the premises as he finds them, and the owner or occupant undertakes no duty to him except that, after becoming aware of his presence, he must not injure him wilfully or, after notice of the child's peril, entrap him by a concealed danger known to the occupier but unknown and not obvious and expectable to an inexperienced child. *Supra; State, use of Lorenz, v. Machen,* 164 Md. 579, 582, 165 A. 695; *Brinkmeyer v. Iron & Metal Co.,* 168 Md. 149, 177 A. 171; *Salmond on Law of Torts* (9th Ed.), sec. 137, pp. 533-538; *Pollock on Torts* (8th Ed.), pp. 457, 458. See *Cooley on Torts* (3rd Ed.), pp. 1269-1273. Compare *Restatement of Law of Torts,* vol. 2, secs. 339, 369.

For the reasons here stated, the child who was drowned was a trespasser, and he is none the less so because the raft is not a part of the realty. *Hughes v. Macfie,* 1863, 2 Hurl. & Colt., 744; *Gay v. Essex Electric Street R. Co.,* 1893, 159 Mass. 238, 34 N. E. 186; *Bishop v. Union R. Co.,* 1884, 14 R. I. 314; *Emerson v. Peteler,* 1886, 35 Minn. 481, 29 N. W. 311; *Jefferson v. Birmingham etc. Co.,* 1896, 116 Ala. 294, 22 So. 546; *Rushenberg v. St. Louis etc. R. Co.,* 1891, 109 Mo. 112, 19 S. W. 216. Since the allegations of the declaration do not disclose any breach of duty by the defendant to the trespassing child, the demurrer was rightly decided, and the judgment must be affirmed.

> *Judgment affirmed, with costs to the appellee.*