705 A.2d 1144

BALTIMORE GAS AND ELECTRIC COMPANY

v.

Donna Rae FLIPPO, Individually, etc.

No. 4, Sept. Term, 1997.

Court of Appeals of Maryland.

Feb. 18, 1998.

682

Stephen J. Rosasco (Paul W. Davis, on brief), Baltimore, for petitioner.

Alan H. Legum, Annapolis, for respondent.

Argued before BELL, C.J., ELDRIDGE, RODOWSKY,* CHASANOW, RAKER and WILNER, JJ., and ROBERT L. KARWACKI, Judge (retired), Specially Assigned.

CHASANOW, Judge.

This appeal arises out of a suit in negligence instituted by Donna Rae Flippo individually and on behalf of her son, J.J. Flippo (Flippo), who was injured when he came into contact with an electric wire owned by Baltimore Gas and Electric Company (BGE). For the following reasons, we shall affirm the judgment of the Court of Special Appeals.

---

* Rodowsky, J., participated in the hearing of this case; however, he did not participate in the conference, decision, and adoption of this opinion.

## I.

On October 1, 1992, Flippo [1] was playing with his sister and other children in the backyard of the residence of Richard and Christine Gaines at 1512 Pickford Lane in Bowie, Maryland. Flippo and the Gaineses' son decided to climb a white pine tree that was located at or near the Gaineses' rear property line. At trial, there was some evidence presented that Flippo had implicit permission from the Gaineses to be in the tree on the day he was injured. Near the higher branches of this tree were two overhead, high voltage electric wires that ran parallel to the Gaineses' rear property line.[2] Flippo testified that he had climbed about half or three-quarters of the way up the tree when his right foot slipped and he began to fall. Reaching out, Flippo's hand came into contact with one of the two electric wires. As a result, Flippo sustained severe injuries.

Donna Rae Flippo filed a negligence suit in the Circuit Court for Prince George's County alleging that BGE was negligent in failing to trim the tree that Flippo was climbing when he was injured. After an eight-day trial in September 1995, the jury returned a verdict in favor of Flippo in the amount of $487,516. Upon BGE's motion, the trial court subsequently reduced the award to $483,162 because there was insufficient evidence to support $4,354 of the $12,000 awarded to Flippo for future medical expenses. On appeal, the Court of Special Appeals affirmed the judgment of the trial court in a reported opinion. *BG & E v. Flippo,* 112 Md.App. 75, 684 A.2d 456 (1996). Additional facts will be provided as necessary.

In the instant case, we granted BGE's petition for writ of certiorari in order to determine:

---

1. At that time, Flippo was almost ten years old.

2. Since October 1967, pursuant to a right-of-way agreement, BGE has had a nonexclusive easement over a portion of Pickford Lane that gives BGE the right to construct, operate, and maintain electric lines along and adjacent to the boundary lines of lots on Pickford Lane.

(1) Whether an unintentional contact with BGE's electric wire constitutes a trespass as a matter of law?

(2) Whether a public service company has a duty to identify and trim a "climbable" tree located in the backyard of a residence near its overhead electric wires?

(3) Whether a ten-year-old boy who knew there was electricity in overhead wires and that electricity is dangerous is contributorily negligent as a matter of law when he nevertheless climbs into a tree and contacts the wires?

(4) Whether it is error to refuse to give a jury instruction on assumption of risk when an instruction has been given on contributory negligence?

## II.  TRESPASS

BGE argues that Flippo was a trespasser, as a matter of law, as to BGE's overhead electric wire.  In addition, BGE asserts that Flippo was a trespasser as to BGE's easement.  Thus, BGE contends, it owed Flippo no duty other than to avoid willfully or wantonly injuring him.  Counsel for Flippo counters that Flippo was not a trespasser as to BGE's electric wire because there is no evidence that Flippo deliberately and voluntarily came into contact with the electric wire.  On this issue, the Court of Special Appeals concluded that Flippo's contact with BGE's electric wire was not a trespass because his act was neither intentional, nor volitional; "it was an obviously involuntary reaction." *Flippo*, 112 Md.App. at 86–87, 684 A.2d at 461.

With regard to premises liability, this Court has "long recognized that a possessor of property owes a certain duty to a person who comes in contact with the property.  The extent of this duty depends upon the person's status while on the property." *BG & E v. Lane*, 338 Md. 34, 44, 656 A.2d 307, 311 (1995).  Historically, in Maryland, four classifications have been recognized:  invitee, licensee by invitation, bare licensee, and trespasser. *Id.*  An invitee is a person "on the property for a purpose related to the possessor's business." *Id.*  The

possessor owes an invitee a duty of ordinary care to keep the possessor's property safe. *Id.* A licensee by invitation is a social guest to whom the "possessor owes a duty to exercise reasonable care to warn the guest of dangerous conditions that are known to the possessor but not easily discoverable." *Id.* A bare licensee is a person on the property with permission, but for his or her own purposes; the possessor owes no duty except to refrain from willfully or wantonly injuring the licensee and from creating " 'new and undisclosed sources of danger without warning the licensee.' " *Wagner v. Doehring,* 315 Md. 97, 102, 553 A.2d 684, 687 (1989) (quoting *Sherman v. Suburban Trust Co.,* 282 Md. 238, 242, 384 A.2d 76, 79 (1978)). "Finally, a trespasser is one who intentionally and without consent or privilege enters another's property." *Id.* As for a trespasser, even one of tender years, no duty is owed except that the possessor may not willfully or wantonly injure or entrap the trespasser. *Murphy v. Baltimore Gas & Elec.,* 290 Md. 186, 190, 428 A.2d 459, 462–63 (1981).

In the case before us, it is clear that Flippo was a licensee by invitation on the Gaineses' property. As the Gaineses' social guest, Flippo had a right to be on the Gaineses' property. In addition, Mrs. Gaines testified that she was aware that children occasionally climbed the particular tree that Flippo was climbing when he was injured. Furthermore, there was some evidence at trial that Flippo had implicit permission from the Gaineses to be in the tree on October 1, 1992. Thus, Flippo was not a trespasser to the Gaineses' property when he climbed the tree.

Furthermore, Flippo was not a trespasser as to BGE's easement. An easement is a "nonpossessory interest in the real property of another." *Boucher v. Boyer,* 301 Md. 679, 688, 484 A.2d 630, 635 (1984). Although the owner of the dominant estate, BGE, is entitled to use its easement, the Gaineses, as owners of the servient estate, are "entitled to use and enjoy [their] property to the fullest extent consistent with the reasonably necessary use thereof by [BGE] in accordance with the terms and conditions of the grant." *Millson v.*

*Laughlin,* 217 Md. 576, 585, 142 A.2d 810, 814 (1958). Since BGE could not rightfully exclude an invitee of the servient estate owner from the premises, Flippo was not a trespasser as to BGE's easement. *See Wagner,* 315 Md. at 108 n. 5, 553 A.2d at 689 n. 5.

BGE asserts, however, that the rule limiting liability to a trespasser applies to an owner or a possessor of personal property as well as real property, and that because Flippo trespassed upon BGE's personal property (the electric wire) without its permission, BGE owed no duty to Flippo except to refrain from willfully or wantonly injuring him. We will first address BGE's argument that it owes no duty to Flippo because he trespassed upon BGE's personal property.

### A.

BGE argues that Flippo was a trespasser, as a matter of law, as to BGE's electric wire. Discussing *Bramble v. Thompson,* 264 Md. 518, 287 A.2d 265 (1972); *Gore v. Jarrett,* 192 Md. 513, 64 A.2d 550 (1949); *Atlantic Coal Co. v. Maryland Coal Co.,* 62 Md. 135 (1884); *Barton Coal Co. v. Cox,* 39 Md. 1 (1873); *Scott v. Bay,* 3 Md. 431 (1853),[3] BGE broadly asserts that "this Court has repeatedly held that, under Maryland trespass law, trespass can be committed unintentionally." In the instant case, the Court of Special Appeals concluded that:

"[O]ne can commit a trespass by entering, intruding, or encroaching on personal property, and no tortious intent, *i.e.,* intent to trespass, is required in order for one to be a trespasser. What is required, however, is volition, *i.e.,* a conscious intent to do the act that constitutes the entry upon someone else's real or personal property. An involuntary entry onto another's property is not a trespass."

*Flippo,* 112 Md.App. at 85, 684 A.2d at 461.

It is a well-settled rule in this State that an action for trespass to real property may be maintained "whether the

---

**3.** The cases cited by BGE involve actions for trespass to real property. Nevertheless, we will examine them as the language assists us in the resolution of this matter.

defendant committed the trespass unwittingly . . . or willfully and wantonly." *Atlantic Coal Co.*, 62 Md. at 143 (noting that a trespass is committed even when a trespasser makes a mistake regarding the title or boundaries of his land and mines coal on an adjoining neighbor's property thinking he is on his own property); *see also Gore*, 192 Md. at 516, 64 A.2d at 551 (noting that a trespass may be committed unwittingly by a person who believes he or she has title to land); *Barton Coal Co.*, 39 Md. at 29–30 (noting that every trespass is an injury whether willful or not even if the defendant honestly believed it was mining its own coal and inadvertently committed a trespass); *Scott*, 3 Md. at 443 (noting that trespass was the proper remedy where the defendant had blasted rocks on his property causing rocks to be thrown onto the premises of the plaintiff and that it was immaterial whether the defendant committed the act willfully or not). As we noted earlier, a trespasser has been defined by this Court as "one who intentionally and without consent or privilege enters another's property." *Wagner*, 315 Md. at 102, 553 A.2d at 687. BGE further asserts that given the "settled state of Maryland law, it is not surprising that this Court has barred recovery to a trespasser without discussing the fact that the trespass in question was in fact unintentional and involuntary." As examples, BGE relies on *Grube v. Mayor, etc., of Balto.*, 132 Md. 355, 103 A. 948 (1918) and *Murphy, supra*.

In *Grube*, a ten-year-old boy was injured during summer break as a result of coming into contact with electric wires while climbing a utility pole that was located in a school yard owned by Baltimore City. *Grube*, 132 Md. at 356, 103 A. at 949. This Court held that the plaintiff was not entitled to recover because he was a trespasser as to the utility pole. *Grube*, 132 Md. at 361, 103 A. at 951. The boy had climbed to the top of the utility pole apparently to watch a baseball game. *Grube*, 132 Md. at 357, 103 A. at 949. We noted that, while resting on the crossarm of the utility pole, the boy somehow slipped and grabbed the electric wire. *Id.* BGE argues that the *Grube* case is indistinguishable from the instant case. We disagree. Although the plaintiff in *Grube* slipped and, as a

result, grabbed the electric wire, he had already attained trespasser status by intentionally climbing the utility pole where he had no right to be. Climbing a utility pole embedded in the ground was treated as a trespass to realty. The poles were obviously intended for the exclusive use of employees maintaining the electric wires and were also placed by the electric company to make the dangerous wires inaccessible. In addition, this Court noted that boys had often been driven from the pole such that "it would be impossible to believe that [the plaintiff] did not know it was not permitted." *Grube*, 132 Md. at 360, 103 A. at 950. In the instant case, however, Flippo climbed the Gaineses' tree with their permission, and thus had not attained trespasser status prior to coming into contact with BGE's electric wire.

In *Murphy*, the plaintiff was injured when his hand came into contact with an electrical transformer owned by BGE. 290 Md. at 188, 428 A.2d at 461. The plaintiff had been bowling and returned to his vehicle that was located in the parking lot of the bowling alley. *Id.* After discovering that his CB radio was missing, he approached what he believed to be a trash dumpster located on the same parking lot. *Id.* Because of darkness, the plaintiff was unable to see that this was in fact a high voltage electric transformer and that the doors on the front of the unit were equipped with locks. *Id.* When the plaintiff first lifted the top of the unit causing it to slide off, he was unable to see anything but darkness inside. *Murphy*, 290 Md. at 188–89, 428 A.2d at 461–62. The plaintiff subsequently lit two matches to see if his radio was located within the container and in doing so sustained a severe electric shock. *Murphy*, 290 Md. at 189, 428 A.2d at 462. This Court held that the plaintiff was barred from recovery because his actions "constituted a substantial and deliberate trespass upon the electric company's property caused by neither emergency nor inadvertence." *Murphy*, 290 Md. at 193, 428 A.2d at 464. Like the *Grube* case, *Murphy* can be distinguished from the instant case in that it is clear that the plaintiff intentionally lifted the protective cover to the unit and reached inside of

BGE's transformer, even though he was unaware of its true nature.

Further supporting its assertion that a trespass can be committed unintentionally, BGE also cites to language contained in the *Bramble* case. In that case, this Court held that even inadvertent trespassers are considered trespassers. *See Bramble*, 264 Md. at 522, 287 A.2d at 267–68. BGE views the inadvertent trespasser as including one who unintentionally and involuntarily comes into contact with the property of another. Because the concept of the inadvertent trespasser was not further explained in *Bramble*, however, it is not clear that this Court's use of the phrase "inadvertent trespasser" takes on the meaning that BGE asserts. In *Bramble*, the plaintiffs had docked their boat at the defendant's pier and were attacked by the defendant's dog when they disembarked from their boat. *Bramble*, 264 Md. at 520, 287 A.2d at 266–67. The plaintiffs' docking and entry onto the defendant's pier was clearly intentional. A close reading of the *Bramble* case indicates that the plaintiffs asserted that they were inadvertent trespassers because they did not willfully intend to trespass. *See Bramble*, 264 Md. at 522, 287 A.2d at 267–68. We noted that "[i]t would be ludicrous to hold that someone is liable because his watchdog failed to discriminate between an inadvertent trespasser on the property and one who is there bent on criminal activity." *Bramble*, 264 Md. at 522, 287 A.2d at 268.

Our review of the case law regarding the amount of volition required for a trespass indicates that some jurisdictions have held that a trespass requires a voluntary act. *See, e.g., Cover v. Phillips Pipe Line Company*, 454 S.W.2d 507, 512 (Mo. 1970) (noting that, "[w]here there is no intentional, voluntary, conscious act there is no trespass"); *McDermott v. Sway*, 78 N.D. 521, 50 N.W.2d 235, 240 (1951) (same); *Puchlopek v. Portsmouth Power Co.*, 82 N.H. 440, 136 A. 259, 260 (1926) (noting that an involuntary or accidental act is not a trespass). With regard to the rule in Maryland limiting a landowner's liability to trespassers, however, this rule may well extend to inadvertent, unintentional trespassers. In the instant case, it

appears that a factual dispute exists as to whether Flippo's actions constituted mere contact or whether Flippo intended to make contact with BGE's electric wire. Although the Court of Special Appeals determined that an involuntary entry onto another's property does not constitute a trespass, we decline to determine whether, as BGE asserts, a trespass can be based on an unintentional, involuntary act because we conclude that the rule limiting liability to a trespasser does not apply under the circumstances of this case.

## B.

In past decisions, we have indicated that the same principles regarding a property owner's liability to trespassers apply to personal property as well as real property. *See, e.g., Murphy,* 290 Md. at 190, 428 A.2d at 462 (noting that "owners of real and personal property have consistently been held to owe no duty to a trespasser, except to abstain from willfully or wantonly injuring or entrapping such a person"); *Mondshour v. Moore,* 256 Md. 617, 261 A.2d 482 (1970) (noting that child was a trespasser as to a wheel where he stepped onto a wheel of a bus sitting at an intersection); *Grube v. Mayor, etc., of Balto.,* 132 Md. 355, 103 A. 948 (1918) (noting that a child was a trespasser as to the utility pole he was climbing); *Stansfield v. C. & P. Tel. Co.,* 123 Md. 120, 91 A. 149 (1914) (noting that a man was a trespasser or a mere licensee where he climbed onto a telephone pole located on a public street). In the cases involving injury to people who climbed utility poles, this Court pointed out that those injured had reached the place of danger by climbing on the pole maintained by the defendants for the purpose of making the dangerous wires inaccessible.

In our most recent case, *BG & E v. Lane,* this Court used the same language limiting a possessor's liability to a trespasser on real property in discussing personal property, but in light of the holding that language may have been dicta. 338 Md. at 44–45, 656 A.2d at 312. We also noted the possibility that a person could trespass "upon personal property without trespassing on the real property upon which the personal property sits." *Lane,* 338 Md. at 45, 656 A.2d at 312. Both

parties, as well as the Court of Special Appeals, assumed that the rule limiting liability to a trespasser applies in the instant case. Because of the circumstances of this case, however, we revisit the language used in *Lane* and hold that the rule limiting liability to a trespasser is not applicable in the instant case where the plaintiff is not a trespasser, but is a licensee by invitation as to the real property. To the extent that the language of our prior cases is inconsistent with this opinion, those cases are overruled.

In *Lane*, young Tyrone Lane sued BGE alleging that he sustained injuries as a result of BGE's negligence. 338 Md. at 40, 656 A.2d at 310. Specifically, the complaint alleged that BGE had left a large empty wooden cable spool, weighing approximately ½ ton, unattended in an area known by BGE to be frequented by children. *Id.* While playing on BGE's spool with other children, Lane was injured when the spool rolled over his head and body. *Id.* At issue before this Court was "whether the trespasser rule should preclude liability in [Lane's] case." *Lane*, 338 Md. at 42, 656 A.2d at 311. Reviewing the rule regarding trespasser liability, this Court noted that:

> "Two points regarding the duty of the possessor of property are often overlooked in this area of the law which is sometimes labelled, too narrowly, 'landowner liability' or 'premises liability.' First, the property need not be real property. The same principles apply to personal property as to real property. * * *
>
> Second, it is the possession of property, not the ownership, from which the duty flows."

*Lane*, 338 Md. at 44–45, 656 A.2d at 312.

The Court then focused on its second point, that the duty flows from the possession of property, and concluded that Lane was not a trespasser because, where an owner gives up possession of personal property, the owner gives up the right to exclude others and, thus, the benefit of a lessened duty to trespassers. *Lane*, 338 Md. at 47, 656 A.2d at 313. Therefore, the Court held that the circuit court's grant of summary

judgment could not be supported by a conclusion, as a matter of law, that Lane was a trespasser because a reasonable fact-finder "could conclude that BGE had lost possession of the spool when some other neighborhood children—not including Lane—took possession of it for recreational purposes," and that "Lane came in contact with the spool only after the other children took possession of it, moved it to the community playground, and began rolling it down a hill." *Lane,* 338 Md. at 47–48, 656 A.2d at 313–14.

Relying on the broad language contained in *Stansfield, Grube, Mondshour,* and *Murphy,* the *Lane* Court assumed that the trespasser rule would apply to personal property. Although this Court has used language indicating that the same principles regarding a property owner's liability to trespassers apply to personal property as well as real property, a careful analysis of our prior cases reveals that such language may, as in *Lane,* have been dictum. Unlike the instant case, the plaintiffs in these cases intentionally trespassed on real property or made contact with the property of the defendant in a manner that may have constituted contributory negligence or assumption of risk as a matter of law.[4] In *Stansfield,* the adult plaintiff was killed when he came into contact with an electric wire while climbing a utility pole in order to recover a kitten. 123 Md. at 123, 91 A. at 149–50. Likewise, the child plaintiff in *Grube* was injured when he came into contact with an electric wire after he deliberately climbed a utility pole in order to watch a baseball game. 132 Md. at 356–57, 103 A. at 949. In *Mondshour,* the six-year-old plaintiff climbed on the rear wheel of a bus that was stopped at an intersection in order to show his friend a trick. 256 Md. at 619, 261 A.2d at 483. The child was injured when the bus began to move. *Id.* This Court concluded that the boy's injuries "flow[ed] from his 'trick,'not from the breach of any

---

4.  In order to establish contributory negligence as a matter of law, "the evidence must show some prominent and decisive act which directly contributed to the accident and which was of such a character as to leave no room for difference of opinion thereon by reasonable minds." *Reiser v. Abramson,* 264 Md. 372, 378, 286 A.2d 91, 93 (1972).

duty owed him by the defendants. . . ." *Mondshour,* 256 Md. at 623, 261 A.2d at 485. In addition, there is no duty on the part of an owner " 'to protect children from their own negligence under the given circumstances.' " *Mondshour,* 256 Md. at 622, 261 A.2d at 484 (quoting *State v. Fidelity Warehouse Co.,* 176 Md. 341, 347, 4 A.2d 739, 742 (1939)). As for *Murphy, supra* part II.A, the plaintiff may have been contributorily negligent, or may have assumed the risk, as a matter of law.

In *Murphy* and *Grube,* it also appears that the plaintiffs trespassed upon the defendants' *real* property. In *Murphy,* the electric transformer at issue was surrounded on three sides by a brick wall attached to a building and "was situated on a concrete support slab imbedded in the ground. . . ." *Murphy,* 290 Md. at 188, 428 A.2d at 461. Murphy arguably trespassed upon BGE's real property by entering the area surrounded by the brick wall in order to reach the transformer. The same is true regarding the plaintiff in *Grube.* Although the Court indicated that the boy "had the right to be in the [school] yard," he could have been considered a trespasser to the real property because the accident occurred in August when school was not in session. *Grube,* 132 Md. at 357, 359, 103 A. at 949–50. In addition, the school yard was fenced and ordinarily kept locked when it was not intended to be used, but the gate was open at the time of the plaintiff's injury because the locks had been broken. *Grube,* 132 Md. at 356, 103 A. at 949.

█ In other jurisdictions, cases similar to the instant case involving "trespasses" to personal property have been decided under traditional negligence principles. *See, e.g., Petroski v. Northern Indiana Pub. Service Co.,* 171 Ind.App. 14, 354 N.E.2d 736 (1976) (holding that it was a jury question whether electric company should have anticipated children climbing a tree with an electric wire that passed through the upper branches of the tree); *Alabama Power Company v. Taylor,* 293 Ala. 484, 306 So.2d 236 (1975) (holding power company could be liable in negligence for personal injuries sustained by ten-year-old girl when she came in contact with uninsulated

power line while climbing a tree that, by the exercise of reasonable care, should have been known to be frequently climbed by children); *Bridges v. Arkansas–Missouri Power Co.*, 410 S.W.2d 106 (Mo.Ct.App.1966) (same—sixteen-year-old boy); *Mullen v. Wilkes–Barre Gas & Electric Co.*, 229 Pa. 54, 77 A. 1108 (1910) (same—boy of tender years). Although an electric company is not an insurer, it owes a duty to exercise reasonable care where "it reasonably may be anticipated that others, whether for business or pleasure, lawfully may come into close proximity to such [electric] lines and thereby may be subjected to a reasonable likelihood of injury." *Bridges,* 410 S.W.2d at 115–16; *cf. Petroski,* 354 N.E.2d at 742 ("Electric companies owe no duty to children to protect them from dangers that cannot be reasonably anticipated.").

Regarding an electric company's liability for injuries caused by contact with power lines, we have previously recognized the distinction between cases

> "where the injury occurred at a place intended for exclusive possession by those maintaining the fixtures alleged to be unsafe, and the class of cases in which the appliances causing the injury were so placed as to be dangerous to persons who might be reasonably expected to come into close proximity to them while occupying adjacent premises or positions."

*Stansfield,* 123 Md. at 125–26, 91 A. at 151. This Court in *Stansfield* cited *Mullen, supra* and *Temple v. McComb City Electric Light & Power Co.,* 89 Miss. 1, 42 So. 874 (1907) in which the defendant utility companies were held liable to the plaintiffs who were injured while climbing trees located on public streets when they came into contact with electric wires passing through the branches of the trees. *Stansfield,* 123 Md. at 126, 91 A. at 151. In all of the cases that this Court has examined "in which the asserted liability was enforced[,] the person[s] involved in the accidents were not trespassers or mere licensees on the defendant's property, but were in adjacent positions where they might be reasonably expected to come in close proximity to the source of danger." *Stansfield,* 123 Md. at 127, 91 A. at 151. Thus, in cases where contact

with power lines is alleged to be a trespass, most states, and even some of our prior cases, draw a distinction between cases involving a plaintiff who is a trespasser or mere licensee on the property or on a utility pole and cases involving a plaintiff not on a utility pole who, by invitation, has a right to be on the real property. This case falls within the latter class.

As a social guest of the Gaineses and having their implicit permission to climb the tree, Flippo had a right to be in the tree at the time he was injured. We decline to apply the real property principle limiting liability to trespassers under the circumstances of this case where the plaintiff was a social guest on the real property and had permission to climb the tree. We do not at this time hold that the principle limiting liability to trespassers *never* applies in cases involving personal property, but we hold that the principle does not apply under the circumstances of the instant case. This is a simple negligence case to which the trespasser analysis does not apply.[5]

## III.  DUTY TO TRIM CLIMBABLE TREES

BGE next contends that a public service company has no legal duty, as a matter of law, to identify and trim "climbable" trees near its overhead electric distribution wires. BGE further requests this Court to remand the case so that proper jury instructions may be issued because the trial court erred when it refused to instruct the jury that a public utility company does not owe any legal duty or obligation to children who may climb trees in the vicinity of its overhead lines and that a public utility has no legal duty or obligation to trim trees near its overhead electrical distribution system for purposes of public safety.[6]

---

**5.**  BGE also asserts that the denial of its requested instruction regarding an unintentional trespass was error. In light of our holding, however, we need not address this issue as BGE was not entitled to any instruction regarding trespass.

**6.**  In light of our holding that a jury could reasonably find that, under the circumstances of this case, BGE had a duty to trim the tree that

In order to have a valid action for negligence, the plaintiff must prove: "(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached the duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty." *Rosenblatt v. Exxon*, 335 Md. 58, 76, 642 A.2d 180, 188 (1994). A legal duty arises from "the 'responsibility each of us bears to exercise due care to avoid unreasonable risks of harm to others.'" *B.N. v. K.K.*, 312 Md. 135, 141, 538 A.2d 1175, 1178 (1988)(quoting *Moran v. Fabergé*, 273 Md. 538, 543, 332 A.2d 11, 15 (1975)). "An important factor used to determine the existence of a duty is foreseeability." *B.N.*, 312 Md. at 141, 538 A.2d at 1178. As this Court stated in *Faya v. Almaraz*, "[t]he *seriousness* of potential harm, as well as its probability, contributes to a duty to prevent it." 329 Md. 435, 449, 620 A.2d 327, 333 (1993) (emphasis in original). An electric company that maintains a dangerous instrumentality, such as a high voltage electric wire, is not required to anticipate every possible circumstance under which an individual might make contact with the electric wire, resulting in injury or death. *Le Vonas v. Acme Paper Board Co.*, 184 Md. 16, 21, 40 A.2d 43, 45 (1944). However, an electric company has a duty to use reasonable care to avoid injury to persons who are in lawful proximity to its electric wires, and who could reasonably be anticipated to come, accidentally or otherwise, in contact with them. *See Stansfield*, 123 Md. at 125–26, 91 A. at 151; *Brown v. Edison Elect. Co.*, 90 Md. 400, 406, 45 A. 182, 183 (1900); *see also Conowingo Power Co. v. State of Maryland*, 120 F.2d 870, 873 (4th Cir.1941).

BGE asserts that it is "unduly burdensome, impractical and unfair" for the intermediate appellate court to impose a duty "to locate and trim every 'climbable' tree that might conceivably be involved in a contact with BGE's overhead

Flippo was climbing, there is no need to separately address BGE's assertion regarding the denial of its requested instructions because BGE was not entitled to such instructions.

electrical distribution system." No such duty is imposed on BGE. We agree with the Court of Special Appeals that, based on the circumstances in the instant case, a jury could reasonably find that BGE had a duty to trim the particular tree that Flippo was climbing or insulate the wire that ran through the tree. *Flippo,* 112 Md.App. at 88, 684 A.2d at 462. We do not hold that BGE has a blanket duty to trim all trees that are located near its overhead electric wires. *Id.*

Although this Court has not had occasion to address a case on point factually with the case before us, many other jurisdictions have done so. The majority of jurisdictions that have addressed this issue have sustained a finding of negligence by electric companies where children are injured by making contact with electrical wires while climbing trees, when the risk of such harm is foreseeable. *See, e.g., Dolata v. Ohio Edison Co.,* 2 Ohio App.3d 293, 441 N.E.2d 837 (1981) (where child was electrocuted when he came in contact with power line while climbing a locust tree located on his family's property, power line ran in close proximity to locust tree, tree had not been trimmed by power company since 1973, and tree was easily climbable with large outreaching branches, evidence was sufficient to support jury's finding that power company was negligent); *Petroski v. Northern Indiana Pub. Service Co.,* 171 Ind.App. 14, 354 N.E.2d 736 (1976) (electric company owed boy injured while climbing a tree that electric company had failed to trim a duty to protect him against high voltage wires running through the tree when the possibility of injury was foreseeable); *Alabama Power Co. v. Taylor,* 293 Ala. 484, 306 So.2d 236 (1975) (trial court's directed verdict for plaintiff against defendant electric company was proper when child was injured while attempting to climb a tree with low branches that had not been trimmed in seven years and grew beside a public alley in a residential neighborhood occupied by numerous small children). *But see Brown v. Panola Light and Power Co.,* 137 Ga. 352, 73 S.E. 580 (1912); *Smith v. Georgia Power Co.,* 43 Ga.App. 210, 158 S.E. 371 (1931) (electric company is generally not liable for injuries sustained by

children who, while playing in trees, come into contact with electric wires).

We adopt the view of the majority of states and hold that, under the facts of this case, there was sufficient evidence to permit a jury to conclude that BGE could have reasonably foreseen that a child may have been injured as a result of its failure to trim the tree that Flippo was climbing or insulate the electric wire that ran through the tree. First, BGE possessed a nonexclusive easement over the residential development that included the Gaineses' property at 1512 Pickford Lane. Pursuant to this easement, BGE had extended overhead electric wires parallel to the rear property lines of lots in a residential neighborhood and had the right to "trim, top or cut down trees adjacent" to the wires in order to provide clearance. In addition, evidence was presented that BGE classified certain trees as "climbable," *i.e.,* easy to climb with low branches; that the white pine tree Flippo was climbing was easy to climb and that BGE was aware of the existence of such climbable trees. Evidence was also presented that children had a tendency to climb the trees in the neighborhood, including the tree involved in this case. Furthermore, "the fact that some of the limbs of those trees were in close proximity to and actually surrounding the electric line creat[ed] a foreseeable hazard to a young child who might be tempted to climb one of those trees without observing or appreciating the significance of the electric line." *Flippo*, 112 Md.App. at 90, 684 A.2d at 463. In light of this evidence, a jury could reasonably conclude that BGE's duty to exercise a high degree of attention and care included the duty to "trim, top, or cut down" such a climbable tree. Accordingly, the case was properly submitted to the jury.

## IV. CONTRIBUTORY NEGLIGENCE

BGE argues that Flippo was contributorily negligent as a matter of Maryland law. The Court of Special Appeals concluded that this contention "is totally devoid of merit." *Flippo*, 112 Md.App. at 91, 684 A.2d at 463. We agree.

"Contributory negligence is the neglect of the duty imposed upon all [individuals] to observe ordinary care for their own safety. It is the doing of something that a person of ordinary prudence would not do, or the failure to do something that a person of ordinary prudence would do, under the circumstances." *Campfield v. Crowther*, 252 Md. 88, 93, 249 A.2d 168, 172 (1969). As a general rule, the issue of contributory negligence is a question for the jury "[w]here there is a conflict of evidence as to material facts relied on to establish contributory negligence, or more than one inference may be reasonably drawn therefrom." *Reiser v. Abramson*, 264 Md. 372, 377–78, 286 A.2d 91, 93 (1972). In order to establish contributory negligence as a matter of law, "the evidence must show some prominent and decisive act which directly contributed to the accident and which was of such a character as to leave no room for difference of opinion thereon by reasonable minds." *Reiser*, 264 Md. at 378, 286 A.2d at 93. This Court has addressed the issue of contributory negligence as a matter of law in a number of electric shock cases. *See, e.g., Liscombe v. Potomac Edison Co.*, 303 Md. 619, 627, 495 A.2d 838, 842 (1985) and cases cited therein.

In electric shock cases, an individual will be deemed contributorily negligent as a matter of law where he or she "voluntarily comes in contact with, or approaches nearer than a reasonably prudent person would, a wire or other thing which he knows, or, as a person of ordinary knowledge and experience, has reason to believe, is sufficiently charged with electricity to be dangerous, and in consequence of such contact or proximity is shocked and injured." *Potomac Edison Co. v. State*, 168 Md. 156, 161, 177 A. 163, 166 (1935). The mere fact that an individual is aware of the presence of electric wires may be sufficient to charge him or her with knowledge that the wires may be dangerous. *Driver v. Potomac Electric Power Co.*, 247 Md. 75, 81, 230 A.2d 321, 325 (1967). However, it is not required that the plaintiff have actual knowledge of the presence of an electric wire for the "law ordinarily *charges* . . . a person of unimpaired vision with seeing an object which, if he had used his senses, he, in the

nature of things, must have seen." *So. Md. Electric v. Blanchard,* 239 Md. 481, 490, 212 A.2d 301, 307 (1965) (quoting 29 C.J.S. *Electricity* § 53 (1965)). Thus, a plaintiff may be charged with the knowledge of the presence of an electric wire where such a wire is in plain view. *See Blanchard,* 239 Md. at 487–90, 212 A.2d at 305–07 (discussing cases in which courts have charged plaintiffs with knowledge of electric wires where wires were in plain view).

In the instant case, there is conflicting evidence regarding whether Flippo was warned about the electric wire in the tree, as well as whether the electric wires were in plain view. At trial, Robbie Gaines, the Gaineses' son, testified that he became aware of one wire running through the tree before Flippo was injured. Robbie also testified that he did not warn Flippo about the electric wire that ran through the tree. However, such testimony conflicted with the testimony given by Robbie during a deposition in which he stated that he warned Flippo to be careful in the tree and that he told Flippo several times not to touch any electric wires in the tree. Flippo testified that he was not warned about the electric wires in the tree, he did not see any wires in the tree, and he would not have climbed the tree if he had known that such wires were in that tree. Flippo further testified that he looked up to find where to climb but did not look for wires in the tree. Flippo did admit that he was aware of the utility pole on the Gaineses' rear property line and of the danger of electric wires generally.

BGE argues that Flippo was at least aware of the presence of electric wires near the tree. In addition, BGE contends that Flippo's assertion that he was not aware of the electric wires in the tree is "simply not credible and not worthy of belief" since the wires were in plain view. Because "it is undisputed" that Flippo understood the dangers of overhead electric wires and that he knew or should have known about the electric wires in the tree before climbing the tree, BGE contends that Flippo was negligent as a matter of law. Counsel for Flippo counters that the testimony fails to conclusively

establish that Flippo knew that there were electric wires running through the tree he was climbing.

We conclude that the issue of contributory negligence was properly submitted to the jury because there was a conflict in evidence as to whether Flippo knew or should have known of the presence of electric wires in the tree he was climbing. In other words, reasonable minds could differ as to whether Flippo failed to exercise ordinary care for his safety. Thus, Flippo was not contributorily negligent as a matter of law.

## V. JURY INSTRUCTIONS

Finally, BGE argues that the giving of an instruction on contributory negligence does not justify the trial court's refusal to give an instruction on assumption of risk where the evidence supports submitting that theory to the jury. BGE asserts that the judgment of the Court of Special Appeals denies BGE its right to have the defense of assumption of risk submitted to the jury when that doctrine applies based upon the evidence presented at trial and when the substance of the defense was not covered by the instruction given to the jury. Flippo counters that there is no evidence that Flippo voluntarily and intentionally exposed himself to BGE's electric wires while climbing and playing in the tree. Thus, Flippo argues that BGE was not entitled to have an instruction given to the jury regarding assumption of risk since the assumption of risk defense was neither legally nor factually supported. In the alternative, assuming that the evidence presented a factual basis for an assumption of risk instruction, Flippo asserts that the failure to give such an instruction was harmless error.

This Court has defined assumption of risk as "an intentional and voluntary exposure to a known danger and, therefore, consent on the part of the plaintiff to relieve the defendant of an obligation of conduct toward him and to take his chances from harm from a particular risk." *Rogers v. Frush,* 257 Md. 233, 243, 262 A.2d 549, 554 (1970). It is well settled in Maryland that in order to establish the defense of assumption of risk, the defendant must prove that the plain-

tiff: "(1) had knowledge of the risk of the danger; (2) appreciated that risk; and (3) voluntarily confronted the risk of danger." *ADM Partnership v. Martin,* 348 Md. 84, 90–91, 702 A.2d 730 (1997). The defenses of assumption of risk and contributory negligence are closely related and often overlap. *Schroyer v. McNeal,* 323 Md. 275, 280, 592 A.2d 1119, 1121 (1991). The defenses "may arise from the same facts and, in a given case, a decision as to one may necessarily include the other." *Id.* "The overlap between assumption of risk and contributory negligence is a complete one where 'the plaintiff's conduct in voluntarily encountering a known risk is itself unreasonable....'" *Schroyer,* 323 Md. at 281, 592 A.2d at 1122 (quoting RESTATEMENT (SECOND) OF TORTS § 496A, cmt. c 4, at 562 (1965)). When the two defenses overlap, "a discussion of contributory negligence may necessarily include assumption of the risk." *Schroyer,* 323 Md. at 287, 592 A.2d at 1125. There are, however, distinctions between the two defenses as we explained in *Warner v. Markoe,* 171 Md. 351, 359–60, 189 A. 260, 264 (1937):

> "The distinction between contributory negligence and voluntary assumption of risk is often difficult to draw in concrete cases, and under the law of this state usually without importance, but it may be well to keep it in mind. Contributory negligence, of course, means negligence which contributes to cause a particular accident which occurs, while assumption of risk of accident means voluntary incurring that of an accident which may not occur, and which the person assuming the risk may be careful to avoid after starting. Contributory negligence defeats recovery because it is a proximate cause of the accident which happens, but assumption of risk defeats recovery because it is a previous abandonment of the right to complain if an accident occurs."

The Court of Special Appeals assumed that the evidence presented raised an issue of assumption of risk and held that, even if it constituted error to refuse to submit to the jury an instruction on assumption of risk as an alternative defense, it was not reversible error under the circumstances of this case since BGE suffered no prejudice. *Flippo,* 112 Md.App.

at 96–97, 684 A.2d at 466. The intermediate appellate court noted the similar factual bases relied upon by BGE in support of both contributory negligence and assumption of risk. *Flippo*, 112 Md.App. at 96, 684 A.2d at 466. The intermediate appellate court explained:

"In order to succeed on a defense of contributory negligence, [BGE] would have to persuade the jury that J.J. Flippo was aware, or chargeable with being aware, of the danger of contact with an overhead electric line and that he knew or should have known of the presence of the wire among the branches of the tree when he undertook to climb the tree. In order to succeed on a defense based on its theory of assumption of risk, [BGE] would bear a somewhat heavier burden of proof: that [Flippo] actually *knew* of the potential danger of overhead electric wires and actually *knew* of the presence of this particular wire when he voluntarily subjected himself to a risk of contact with the wire by climbing the tree." (Emphasis in original).

*Id.* Furthermore, the intermediate appellate court explained that if BGE "were to prove a defense of assumption of risk it would at the same time prove an equally complete defense of contributory negligence. Proving a case of contributory negligence, however, would not necessarily establish an assumption of risk defense." *Id.*

BGE equates the intermediate appellate court's conclusion with holding that because the two doctrines overlap there is no legal difference between them. However, we agree with the Court of Special Appeals that even if the trial court erred in not submitting an assumption of risk instruction to the jury, BGE did not suffer any prejudice from the trial court's refusal under the circumstances of this case. Since the trial court submitted the issue of contributory negligence to the jury and it found in favor of Flippo on that issue, the jury in essence found that the factual basis for that defense was not established. Thus, in the instant case, the jury's finding that Flippo was not contributorily negligent would have also precluded a finding that he assumed the risk. By returning a verdict in favor of Flippo, the jury essentially considered and

rejected the assumption of risk defense even though it did not receive a separate instruction on that defense.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED.   COSTS TO BE PAID BY PETITIONER.*

RAKER, J., concurs in the judgment only.