OPINION
LUTTIG, Circuit Judge.
This diversity case arises from the crash of a Piper PA 28-140, a four-seat aircraft, shortly after takeoff from the Potomac Airfield Airport in Fort Washington, Maryland. The Piper clipped trees on neighboring property and crashed, killing the pilot, Hank Griffioen, and injuring Maureen Walsh, one of the passengers. An autopsy revealed marijuana in Griffioen’s lung fluid and urine, J.A. 741, and Walsh’s expert acknowledged that Griffioen erred in failing to use proper short field take-off procedures, given the density altitude that day and the weight in the aircraft. J.A. at 186.
Having settled with Griffioen’s estate and employer, Walsh now sues the neighboring landowners for maintaining the tall trees on their property and the Potomac Airfield for operating its runway in an unsafe location. The district court dismissed Walsh’s complaint against the landowners pursuant to Fed.R.Civ.P. 12(b)(6) and granted summary judgment for Potomac Airfield. For the reasons that follow, we affirm.
I.
Under Maryland law, the duty owed by an owner or occupier of land depends on the plaintiffs status as an invitee, invited licensee, bare licensee, or trespasser. See Wells v. Pollard, 120 Md.App. 699, 708 A.2d 34, 39 (App.1998). The district court held that Walsh was a trespasser, or, at best, a bare licensee, to whom the landowners owed no duty of reasonable care. J.A. at 6.
On appeal, Walsh asserts that premises liability law should not apply, because contact with the trees occurred in publicly-owned “navigable airspace,” and not on the landowners’ property. Appellant’s Br. at 30-33. Although she cites no legal authority to establish precisely where the landowners’ property ends and where “navigable airspace” begins,[1] Walsh argues *821 that the landowners’ trees are like trees encroaching on public highways on land. Id. The district court rejected this argument, holding that the crash occurred on the landowners’ property, and not in publicly-owned “navigable airspace.” J.A. at 37. We agree.
The Supreme Court of the United States has recognized that the common law ad coelwm doctrine[2] “has no place in the modern world.” United States v. Causby, 328 U.S. 256, 261, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946). Nevertheless, Maryland law holds that “[t]he landowner owns at least as much of the space above the ground as he can occupy or use in connection with the land.” Friendship Cemetery v. Baltimore, 197 Md. 610, 81 A.2d 57, 62 (1951); see also Causby, 328 U.S. at 264, 66 S.Ct. 1062 (“[I]t is obvious that if the landowner is to have full enjoyment of the land, he must have exclusive control of the immediate reaches of the enveloping atmosphere. Otherwise buildings could not be erected, trees could not be planted, and even fences could not be run.”). Therefore, declaring the space occupied by the trees to be publicly-owned would be inconsistent with Maryland law.
Walsh further argues that the landowners’ duty of care should be defined according to the Code of Maryland Aviation Regulation (“COMAR”) § 11.03.05.03(B)(1), which prohibits vegetation from growing “to such a height as to be an airport hazard.” Appellant’s Br. at 20-23. However, the violation of a statute or ordinance confers no right of action on a trespasser or a bare licensee. See Osterman v. Peters, 260 Md. 313, 272 A.2d 21, 23 (1971) (“A trespasser can acquire no such right except in case of willful injury. The mere violation of a statute would not give it.”). Given Walsh’s status as an uninvited entrant on the landowners’ property, we reject appellant’s argument that COMAR § 11.03.05.03 establishes the landowners’ duty of care.[3]
*822 Walsh finally argues, relying on Baltimore Gas & Electric Co. v. Flippo, 112 Md.App. 75, 684 A.2d 456 (Ct. Spec.App.1996), that she should not be regarded as a trespasser because she did not intentionally or voluntarily enter the landowners’ property. Appellant’s Br. at 27-29. However, on appeal in Flippo, the Maryland Court of Appeals expressly declined to hold that a trespass must consist of an intentional or voluntary act. See Baltimore Gas & Electric Co. v. Flippo, 348 Md. 680, 705 A.2d 1144, 1151. Instead, the court held that Flippo was not a trespasser because he was a licensee by invitation on the real property through which the electric company’s easement ran. Id. at 1153. Flippo does not help Walsh, as she was not a social guest on the real property where the accident occurred. Hence, she was owed no duty of reasonable care.
The landowners’ duty to Walsh was not one of reasonable care, but, rather, to refrain from wanton or wilful misconduct. Id. Because Walsh’s complaint does not allege willful or wanton behavior by the landowners, the district court’s dismissal of the counts against the landowners was proper.
II.
As to Potomac Airfield, Walsh seeks to impose a duty under Maryland air regulations, arguing that the obstruction clearance slope to the airport’s runway was less than the ratio required by the Maryland Aviation Administration (“MAA”). Appellant’s Br. at 10, 43-46. However, the COMAR regulations apply only to approach paths, not departure paths. Maryland law imposes no duty on the airport to provide any particular obstacle clearance slope for takeoffs.
In arguing that COMAR imposes a duty of care regarding takeoffs, Walsh relies on the definition of “hazard” in COMAR § 11.03.05.01(B)(7), which states as follows:
“Hazard” means any object which affects the area available for landing, takeoff, and maneuvering of aircraft, thus tending to impair or destroy the utility of an airport and present a potential danger to users of the airport and residents of the area.
(Emphasis added). However, this is merely a definition of “hazard,” not a prohibition of hazard, and imposes no duty on an airfield or on anyone else. The prohibited “hazard to air navigation” is defined more narrowly in COMAR § 11.03.05.04(A):
An obstruction is a hazard to air navigation if it: (1) Is greater than 200 feet above ground level and within 3 nautical miles of the established reference point of any public-use airport licensed by the Administration; or (2)[p]enetrates any *823 imaginary surface specified in this regulation as applied to any airport.
(Emphasis added). It is undisputed that the trees are less than 200 feet high; thus, to be a “hazard to air navigation,” the trees must penetrate an “imaginary surface.” However, “imaginary surface” applies only to approach paths, not departure paths. COMAR § 11.03.05.01(B)(8) states:
“Imaginary surfaces” means a series of planes or curved surfaces placed at various angles or arcs in relation to an airport’s runways and based on a runway’s classification and most precise available or planned aircraft approach path ...
(Emphasis added).
Even though COMAR does not regulate departure paths, Walsh asserts that the airport still violated COMAR regulations because the trees that were hit penetrated an actual or hypothetical approach path used by airplanes landing at the airfield. However, Walsh still cannot establish a violation of a regulatory duty because Potomac Airfield operated under an express waiver of the approach path requirements. J.A. at 66, 86. The waiver provides that “[a] waiver to tree obstacles in the approaches to both ends of the runway would not endanger public safety and would be in the best interest of the aviation public.” J.A. at 67. Potomac Airfield therefore operated in full compliance with Maryland air regulations, and did not violate any statutory or regulatory duty owed to Walsh.
Even without the waiver, for a violation of a statute to be evidence of negligence in Maryland, it must cause harm “to a person within the class of persons the statute seeks to protect and the harm [must be] the kind that the statute is designed to prevent.” Hartford Insurance Co. v. Manor Inn of Bethesda, Inc., 335 Md. 135, 642 A.2d 219, 229 (1994). Walsh’s aircraft was departing from, not landing at, Potomac Airfield. Accordingly, her accident is not the kind of harm the regulations governing approach paths are designed to prevent.
Walsh could argue that the airport violated a common-law duty, independent of Maryland regulations, to provide a safe departure path. However, we do not believe, based on the record before us, that a reasonable factfinder could find for Walsh against the airport in this case. The record does not reveal, before the accident in question, other instances of departing planes hitting (or even nearly missing) the trees that might impose upon the airport a duty to provide for safer takeoffs. J.A. at 386. While Walsh correctly notes that MAA regulators recognized the trees as obstructions to approach surfaces when performing inspections, and that the airport was aware of this, see J.A. at 66, 74, 78, 80, 82, there is nothing in the MAA reports to suggest that the trees posed a danger to aircraft departing the airfield. Although plaintiffs expert opines that the airport was not “reasonably safe” for the occupants of Walsh’s plane, J.A. 189, there are no facts in the record, disputed or otherwise, that would allow a reasonable jury to conclude that the airport breached a duty to provide for safe departures. A single crash involving a pilot who disregarded proper short field takeoff procedures and operated the aircraft under the influence of marijuana is not sufficient to allow a jury to find that the airport failed to provide for safe departures.
Finally, Potomac Airfield strenuously argues that the pilot’s undisputed failure to use proper take-off techniques and gross misconduct in operating the aircraft under the influence of marijuana should constitute the superceding and sole proximate cause of the accident. We find it unnecessary to reach this issue, because we hold that no reasonable jury could find that *824 Potomac breached a regulatory or common-law duty owed to Walsh in the first place. Potomac Airfield complied with Maryland air regulations, obtaining waivers where necessary, and there is insufficient evidence in the record to impose a duty regarding safe departures independent of that required by the state regulatory authorities. Accordingly, the district court’s grant of summary judgment for Potomac Airfield was not in error.
The judgment of the district court is affirmed.

AFFIRMED.

. The Piper's accident report estimated the trees at the crash to be 80-95 feet high, and *821 the crash site was estimated to be one-half mile (2640 feet) from the departure end of the runway. LA. 90. Walsh cites no legal authority to suggest that "navigable airspace” could be that low.

. "Cujus est solum, ejus est usque ad coelum et ad inferos.” ("To whomsoever the soil belongs, he owns also to the sky and to the depths.”)

. We do not construe COMAR § 11.03.05.03(B)(1), which prohibits vegetation from growing "to such a height as to be an airport hazard,” to define the upward boundary of a landowner’s property under Maryland law. Although it is a land-use regulation that prohibits owners from growing vegetation to a certain height, that is different from saying that the landowners do not own that airspace in which COMAR § 11.03.05.03(B)(1) tells them they cannot grow vegetation. If COMAR were to be interpreted in such a manner, which declares to be in the public domain all airspace above an owner's land that the owner could occupy or use, simply because that airspace is necessary for a nearby airport to operate, it would raise serious questions under the Fifth Amendment's takings clause, especially given the Supreme Court’s admonition that a landowner "must have exclusive control of the immediate reaches of the enveloping atmosphere. Otherwise buildings could not be erected, trees could not be planted, and even fences could not be run.” United States v. Causby, 328 U.S. 256, 264, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946) (emphasis added). Moreover, it would no longer be necessary for a state to condemn easements (and compensate the landowners) when a new airport is built, if all airspace above the land of neighboring landowners were automatically deemed to be in the public domain.
Even under what we believe to be the view of our dissenting colleague, who likewise interprets COMAR § 11.03.05.03(B)(1) to be a land-use regulation, the landowners still own the airspace that the trees occupy, which renders Walsh an uninvited entrant on the landowners' property. And this is true regardless of whether a regulation limiting the growth of trees in airspace that the landowners own *822 would constitute a "regulatory taking” under Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992). Regulatory taking or not, the landowners would still own the airspace where the accident occurred, and Walsh would still be a trespasser.
If, on the other hand, COMAR § 11.03.05.03(B)(1) were to be construed to appropriate that airspace into the public domain, (which is the only way Walsh can avoid the conclusion that the landowners owed her nothing more than a duty to refrain from wanton or wilful misconduct), the landowners would have suffered a physical ouster from that portion of their airspace. Under that interpretation of COMAR § 11.03.05.03(B)(1), Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992), on which Judge King relies, would not govern, because the landowners would be dispossesed of a portion of their property. Lucas only applies to regulatory deprivations of an owner’s rights in the use of property that he still owns.
Accordingly, COMAR § 11.03.05.03(B)(1) does not alter our conclusion that the accident in this case occurred on the landowners’ property rather than in publicly-owned navigable airspace.